## Pemberton Appeal.

Argued November 22, 1968. Before BELL, C. J., JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Robert C. Lea, Jr.,* with him *Hart, Childs, Hepburn, Ross & Putnam,* for appellants.

*Fronefield Crawford,* Solicitor, for commissioners, appellants.

*Douglas D. Royal,* with him *Harold D. Greenwell,* and *Greenwell, Porter, Smaltz & Royal,* for township, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 23, 1969:

The instant matter concerns an appeal by the Radnor Township School Authority (hereinafter referred to as the Authority) from an adverse decision of the Board of Adjustment of Radnor Township. This case involves the conflicting assertions of authority by two municipal bodies in Radnor Township, i.e., the Authority and the Township. In essence, the basic issue to be resolved is whether the Township, under The First Class Township Code and the Zoning Ordinance enacted thereunder, has the power to regulate, by means of its Zoning Ordinance, the location of public school buildings by the Authority within Radnor Township.

On July 27, 1967, the Authority acquired title, by agreement and deed in lieu of condemnation, to premises known as 801 Maplewood Avenue, Wayne, Radnor Township, Delaware County, Pennsylvania, consisting of 19.8 acres. This tract will hereinafter be referred to as the Geist Tract. The Authority acquired the Geist tract at the request and authorization of the School District of Radnor Township. The School

District had passed a unanimous resolution approving the purchase of the Geist tract for purposes of constructing thereon an elementary school. Thereafter the School District entered into a lease with the Authority concerning the said Geist tract.

On September 25, 1967, the Authority, as record legal owner of the Geist tract, and upon authorization and approval of the School District, made application to the Building Inspector of Radnor Township for a certificate of occupancy to utilize the said tract as an elementary school together with attendant facilities, including a playground area and a parking lot. The application was refused on October 4, 1967 on the ground that such use was not permitted under Article V, §501 of the Radnor Township Zoning Ordinance. The Geist tract is situate in an A-2 Zoning District in which the requested use is not permitted by special exception or otherwise.

Thereafter, the Authority, upon approval and authorization by the School District, appealed to the Radnor Township Board of Adjustment the refusal of the Building Inspector to issue a Certificate of Occupancy. Three extensive public hearings were held before the Board of Adjustment in the months of October, November and December, 1967.

During the course of the appeal proceedings before the Board of Adjustment, both the Authority and the School District petitioned the Commissioners of Radnor Township for a rezoning of the Geist tract from A-2 to I-Institutional and a hearing was held before the Commissioners on November 20, 1967 at which time it was stipulated that the testimony and exhibits introduced and to be introduced before the Board, as well as other evidence, would be consolidated and would constitute the record before the Commissioners as well as the Board of Adjustment.

The Commissioners of Radnor Township, by decision dated December 18, 1967, refused the application for rezoning. Thereafter, on December 28, 1967, the Board of Adjustment rendered a decision dismissing the Authority's appeal and refused its alternative request for a variance. The Authority then appealed to the Court of Common Pleas of Delaware County, which held, in an opinion by Judge DIGGINS, that the Township was without authority to regulate the location of public school buildings. We agree.

The court below relied, as do we, upon several provisions of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, Art. 1, §101 et seq., 24 P.S. §1-101 et seq., as the basis for its conclusion. The crucial provision is §702 of the Code, which provides: "The location and amount of any real estate required by any school district for school purposes shall be determined by the board of school directors of such district, by a vote of the majority of all the members of such board. No new school building shall be erected without a proper playground being provided therefor." Other provisions invest the school district with the power to acquire land, including by condemnation. The court below held that to allow the Township, by zoning regulations, to prevent a school from being located in a particular spot, would render nugatory the above-quoted provision. The court found no conflict between such provision and §§3101-3 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, Art. XXXI, as amended, 53 P.S. §§58101-3. These sections give the township general power to enact zoning regulations. Section 3103 provides, inter alia: "Such regulations shall be made in accordance with a comprehensive plan . . . to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements." The court relied on §63 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019,

Art. IV, §63, 46 P.S. §563, which provides: "Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail." It thus held that the very general power of the Township to regulate so as to facilitate schools did not conflict with the specific power of the School District to choose the location of schools. Moreover, even if they did conflict, the special controlled the general. We are in full accord with such reasoning.

Appellant urges upon us two cases which it claims require a decision favorable to it. These are *Sch. Dis. of Phila. v. Zoning Bd. of Adj.*, 417 Pa. 277, 207 A. 2d 864 (1965), and *Wilkinsburg-Penn Jt. W. A. v. Churchill B.*, 417 Pa. 93, 207 A. 2d 905 (1965). We find both of those cases distinguishable from the instant case. In the *Philadelphia* case the issue was whether the Philadelphia Zoning Board of Adjustment was empowered to require the Philadelphia School District to comply with a City zoning regulation concerning off-street parking. This Court, speaking through Mr. Justice EAGEN, held that the City of Philadelphia was indeed empowered to require the School District to comply with *off-street parking regulations*. However, it hardly follows like the night the day, as appellant would have us believe, that the *Township of Radnor* is empowered to regulate *the very location of schools*. In the first place, this Court in *Philadelphia* relied heavily on the peculiar characteristics of a First Class School District. We stated, at page 285: "We are not persuaded that the legislature has, by its statutory

pronouncements, given a school district of the *first class* complete and plenary power over its physical plants. In fact, the opposite is indicated. . . .

"[S]tandardized approval of construction plans by the Department of Public Instruction or the State Council of Education is specifically limited to school buildings in districts of the *second, third and fourth classes*: 24 P.S. §§7-731, 7-733 and 7-734. . . ."

"A reading of these provisions shows the obvious intent of the legislature to provide fully for the safety and health of the Commonwealth's citizenry. It wisely recognized that the congestion and other peculiarly local problems in cities of the magnitude of cities of the *first class* could and often do permit of and require more stringent regulation for the protection of the general welfare." (Emphasis added).

Thus, even were the instant ordinance merely regulating the manner of construction of the school, it is very doubtful that it could survive. For the legislature has given the instant school district power over its physical plant and required standardized approval of construction plans by the authorities in Harrisburg. Thus there is no "hiatus in regulation necessary to the health and safety of the community." *Philadelphia,* at page 287.

Yet we hasten to point out that the instant ordinance does not involve the manner of construction of a school. It involves the more basic question of whether by its zoning regulations a township can exclude schools from certain areas. In *Philadelphia,* supra, at page 289, we alluded to this problem:

"We feel constrained to state at this point that the question of whether or not the City can prevent the erection of a school building in any particular zoning district has not been raised on this appeal for the reason that the Board found as a matter of fact that a school was a permitted use in the districts here in-

volved. We therefore find it unnecessary to determine whether the Commonwealth has an overriding interest in the fact of existence, as opposed to the manner of construction, of school buildings in the City of Philadelphia. We would consider it highly doubtful, however, that the City could 'zone-out' schools entirely, or could limit the statutory grant of discretion applicable to all school directors within the Commonwealth to choose the location of school grounds (24 P.S. §7-702)." We now face this issue squarely and hold that §702 of the Public School Code, 24 P.S. §7-702, does indeed prevent the township from limiting, by its zoning ordinances, the statutory grant of discretion to school directors to choose the location of school grounds.

Nor is *Wilkinsburg-Penn Jt. W. A. v. Churchill B.*, supra, of any greater succor to appellant. We there held, in an opinion by Mr. Justice COHEN, that the property owned by a municipal water authority was subject to the zoning power of a borough, and thus the borough could prevent the authority from placing its water tower in a particular area. Appellant seeks to vault from that holding to a holding that property owned by a school district is subject to the township's zoning powers, and thus the township can prevent the school district from placing its school in a particular area. While it makes a nice syllogism, it overlooks a vital consideration. The water authority was forced to rely upon, as excluding regulation, a very general provision of the Municipal Authorities Act, Act of May 2, 1945, P. L. 382, §4, as amended 53 P.S. §306B (h), permitting it "to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service." We held that the authority's argument was fallacious, that the borough, by enacting and administering its zoning ordinances, was not "determining" the Authority's service.

The authority could point to no specific statutory power to locate the service.

By contrast, §702 of the Public School Code clearly and unequivocally vests precise and specific power in the school district and directors thereof to locate, determine, acquire, and if necessary condemn, all real estate deemed necessary for schools. And the township's zoning regulation clearly is determining the locations of schools. It thus cannot be squared with §702.

The order of the court below is affirmed.

Mr. Chief Justice BELL and Mr. Justice COHEN concur in the result.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.