**HAZLETON AREA SCHOOL DISTRICT, Appellant,**

v.

**ZONING HEARING BOARD OF HAZLE TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Nov. 9, 1998.

Edward P. McNelis, Hazelton, for appellant.

Charles R. Pedri, Hazelton, for appellee.

Before FRIEDMAN and FLAHERTY, JJ., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

The Hazleton Area School District (HASD) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) which affirmed the decision of the Hazle Township (Township) Zoning Hearing Board (ZHB) denying HASD's application to expand a previously approved special exception and thereby permit HASD to use an athletic field located at the Hazleton Area Senior High School for non-school-related ballgames. We affirm.

HASD is a second class school district with its principal office located in the Township. On February 2, 1990, the ZHB approved HASD's application for a special exception to construct the Hazelton Area Senior High School in an area zoned R–1 residential. Subsequently, HASD applied for a building permit to construct athletic fields for the school, including a hardball field, a softball field and six tennis courts, adjacent to the high school building. Following hearings on the matter, the ZHB granted HASD's application with attached conditions.[1]

On April 4, 1994, HASD submitted an amended application for use and improvements of the athletic fields, seeking to add two dugouts, two water fountains, a scoreboard and a backstop to the hardball field. In an April 25, 1994 decision, the ZHB granted the amended application but indicated that the hardball field could be used only for school baseball practice and interscholastic competition.[2] On April 10, 1996, HASD submitted an application to the ZHB requesting a change in the ZHB's April 25, 1994 decision; HASD sought to expand the use of the hardball field to include non-school-related ballgames.[3] Following a hearing at which both supporters and challengers of HASD's application provided testimony, the ZHB rendered an oral decision on June 3, 1996, denying HASD's request. A written decision denying HASD's application was filed June 25, 1996.

HASD appealed the denial to the trial court[4] arguing, *inter alia*, that when the ZHB restricted HASD's use of the athletic field in its April 1994 decision, and then sustained that restriction in its June 1996 decision, the ZHB impermissibly preempted and interfered with the authority specifically granted HASD under the Public School Code of 1949 (School Code)[5] to locate and erect

---

1. The conditions placed upon the ZHB's grant of variances included: (1) no exterior lighting; (2) planting of trees to screen a neighboring property; (3) no concession stands; (4) no lavatory/restroom facilities; (5) no dugouts; (6) no scoreboards; and (7) no football practice. (R.R. at 5a.)

2. Specifically, paragraph 5 of the ZHB's April 25, 1994 decision stated, "Upon approved completion of the aforementioned structures and dimensions, it is understood that the hardball field can then be utilized for practice and interscholastic competition." (R.R. at 7a.) Although paragraph 5 does not specifically exclude other uses of the facility, both parties seem to agree that the language in this paragraph restricts use

of the hardball field solely to school practice and competition.

3. The Hazleton Area American Legion Baseball League, which was open to boys between 15 and 19 years of age, contacted HASD requesting to use the hardball field for its practice sessions and league games when the high school was not using the facility.

4. The ZHB granted the Township's motion to intervene in this matter on July 29, 1996. (R.R. at 22a–23a.)

5. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702.

school facilities and to implement its educational and community related purposes. Further, HASD argued that the ZHB decision was a mere recommendation and, thus, was not binding upon HASD. The trial court disagreed with HASD's contentions and affirmed the ZHB's decision. HASD now appeals to this court.[6]

HASD first argues that the trial court erred in affirming the ZHB's decision because the restrictions that the ZHB placed on the use of the hardball field, i.e., allowing only school baseball practice and interscholastic competition, clearly obstructed HASD's performance of its statutory duties under the School Code. In fact, HASD contends that those restrictions render the facility virtually useless by preventing HASD from performing both its school-related and non-school-related functions. We disagree.

Initially, we point out that in making this argument, HASD appears to challenge the ZHB's restriction on the use of the hardball field not merely as a denial of HASD's ability to allow *non-school-related* ballgames on the field, but also as an interference with HASD's duties to perform *school-related* activities on the field. In the latter context, HASD asserts that the ZHB's restrictions impermissibly prevent HASD from utilizing the athletic field for educational purposes such as school band practice, field hockey practice or instructional space. (*See* HASD's brief at 17.) In support of this assertion, HASD relies on section 511 of the School Code, 24 P.S. § 5–511, in which the General Assembly reserves for local boards of school directors specific powers to determine and enforce reasonable rules and regulations regarding the control and supervision of athletics *related to school programs.*[7] However, we need not consider whether HASD has a valid argument in this respect because this is not the issue that is now before us. HASD's application to the ZHB sought permission to use the hardball field for *non-school-related* ballgames. Because it is that application which the ZHB considered and denied, we must limit our review to a determination of whether denial of that application was proper.

In support of its position, HASD also relies on sections 701 and 702 of the School Code, 24 P.S. §§ 7–701 and 7–702,[8] as reserving

---

**6.** There is a question raised as to our scope of review here. This court's scope of review in zoning cases depends upon whether additional evidence is taken by the trial court. Where the trial court does not take additional evidence, we review the ZHB's decision to determine whether the ZHB committed an error of law or an abuse of discretion. *De Cray v. Zoning Hearing Board of Upper Saucon Township*, 143 Pa.Cmwlth. 469, 599 A.2d 286 (Pa.Cmwlth.1991). However, where the trial court does take additional evidence, it must decide the case *de novo*, making its own factual findings. *Id.* We must then determine whether the trial court committed an error of law or an abuse of discretion. *Id.* Thus, if the trial court receives, and does not reject, additional factual evidence relevant to the issue on the merits of the zoning appeal, the trial court must set forth appropriate findings of fact to allow us to properly review the trial court's decision. *Id.*

Here, HASD notes that the trial court conducted a hearing on November 24, 1997, at which it heard argument by and between counsel for the respective parties, (R.R. at 216a–34a), and, in addition, the trial court accepted "evidence" consisting of minutes from the ZHB meeting of April 25, 1994 and a set of stipulations submitted by the Hazelton Area School Board, which essentially set forth the findings and conclusions of the prior ZHB decision. (R.R. at 217a, 233a). HASD contends that the trial court should have

conducted *de novo* review, and this court must review the trial court's decision rather than the decision of the ZHB. We disagree. The record here indicates that the trial court did not receive any *additional* relevant factual evidence; therefore, the trial court acted properly in reviewing the ZHB decision, and we must do likewise.

**7.** That section provides, in relevant part:

(a) The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, . . . and other activities *related to the school program* . . . .

. . .

(c) The board of school directors may (1) permit the use of school property, real or personal, for the purpose of conducting any activity *related to the school program*, or by any school or class organization, club, society, or group . . . .

24 P.S. § 5–511 (emphasis added).

**8.** These sections provide in relevant part:

The board of school directors of each district shall provide the necessary grounds and suitable school buildings to accommodate all the

specific powers and discretion to school districts to locate school buildings and the playgrounds associated with those buildings. HASD notes that, after considering the relationship between the grant of these specific powers in the School Code and the general power of municipalities to enact land use regulations, our supreme court has held that a municipality may not, through land use regulations or zoning ordinances, limit a school district's power to choose the location of a school. *See Pemberton Appeal,* 434 Pa. 249, 252 A.2d 597 (1969); *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 207 A.2d 864 (1965).[9] Relying on *Pemberton Appeal* and *School District of Philadelphia,* HASD contends that sections 701 and 702 of the School Code preempt *any* authority the ZHB may have under the local zoning ordinance.

Again, however, it appears that HASD has misconstrued the issue before us. Because, here, the ZHB already has approved the location and construction of the high school and its accompanying athletic fields, the issue now is not whether the ZHB has the power to regulate HASD's location of public school

buildings but, rather, whether the School Code provides HASD with specific power to use the school property for non-school-related activities that would preempt the Township's conflicting land use regulations or zoning ordinances.[10]

HASD relies on section 775 of the School Code as providing it with just such power, specifically, the authority to lease any of its athletic fields to any reputable organization that HASD deems proper. Section 775 of the School Code provides:

> The board of school directors of any district may permit the use of its school grounds and buildings for social, recreation, and other proper purposes, under such rules and regulations as the board may adopt. The board shall make such arrangements with any city, borough, or township authorities for the improvement, care, protection, and maintenance of school buildings and grounds for school, park, play, or other recreation purposes, as it may see proper. *Any board of school directors may make such arrangements as it may see proper with any officials or*

children ... in said district, who attend school....
24 P.S. § 7–701.
> The location and amount of any real estate required by any school district *for school purposes* shall be determined by the board of school directors of such district.... No new school building shall be erected without a proper playground being provided therefor.
24 P.S. § 7–702 (emphasis added).

**9.** Similarly, in *School District of Pittsburgh v. City of Pittsburgh,* 23 Pa.Cmwlth. 405, 352 A.2d 223 (Pa.Cmwlth.1976), this court recognized that the General Assembly, in an effort to fulfill its constitutional mandate to provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth, (Article III, section 14 of the Pennsylvania Constitution), delegates various powers and duties to school districts within the Commonwealth including, *inter alia:* (1) the *exclusive* power to establish and maintain schools and to provide the grounds and buildings necessary for administering the public education system; and (2) the *sole* power and discretion to determine the location and size of real estate necessary to carry out this power.

**10.** Although our courts have recognized that a municipality's land use regulations must yield to a school district's power to locate a school facili-

ty anywhere within the school district and, further, that a municipality may not interfere with any matter pertaining to school facilities which has been preempted by the State, we note that school districts must still have their plans approved by the municipality and that they do not always have a clear legal right to such approval. As we stated in *School District of Pittsburgh:*

> It is quite proper for municipal officials to be concerned about their citizens' welfare and the effect of schools upon the orderly development of neighborhoods. They should be given notice of the school district's plans for the construction and alteration of school facilities. *It is, of course, possible that some construction or land use by a school district will not be for educational purposes or otherwise preempted by the State.* It would be improper, therefore, to permit school districts to proceed with construction or development without some formal notice to the municipality. It is for these reasons that one of the holdings in this case is that the school districts must make applications, together with all the necessary documentation, for permits as required of all other developers in the municipality.

*Id.* 352 A.2d at 229, (emphasis added); *see also Council Rock School District v. Wrightstown Township Zoning Hearing Board,* 709 A.2d 453 (Pa.Cmwlth.1998); *School District of Philadelphia.*

*individuals for the temporary use of school property for schools, playgrounds, social, recreation, or other proper educational purposes,* primaries and elections, and may permit the use of any school building for holding official meetings of the governing authorities of corporate or politic, governmental or quasi-governmental bodies, created by authority of any act of Assembly. The use thereof shall not interfere with school programs and shall be subject to reasonable rules and regulations adopted by the board of school directors.

The board of school directors of any school district shall have power and authority to lease any part of their respective school building, equipment and premises, or any vacant building, for any educational purpose. Such leases shall be subject to the terms and regulations which may be adopted by the board of school directors, and except in districts of the first class, shall be further subject to the approval of the Department of Public Instruction.

Funds raised by individuals, groups, associations, or corporations, through the permissive use of school grounds or buildings, now or hereafter authorized by law, shall be the property of the individuals, groups, associations, or corporations, and not the property of the school district, subject, however, to such arrangements as the board may, at its discretion, lawfully make.

*The board of public education or the board of school directors of any school district shall have the power and authority to lease any of their respective school buildings or athletic fields to any reputa-*

*ble organization or group of persons for charitable purposes,* subject to such charges as the board may consider proper to reimburse it for any costs resulting from the leasing of such school buildings or athletic fields. At the time of such leasing, any such board may require a bond, in an amount that it may deem proper, with responsible sureties or securities, and a statement of the charitable purposes for which such lease is requested.

24 P.S. § 7–775 (emphasis added).

Based on this language, HASD asserts that the ZHB's action limiting HASD's use of the subject grounds to baseball practice and interscholastic competition precludes HASD from exercising its state-mandated authority under section 775 of the School Code to enter into agreements for the utilization of the hardball field, and, thus, the ZHB's limitation is unenforceable. Further, relying on the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, HASD argues that the special powers granted to school directors through the School Code supersede any conflicting general power of the Township to enforce its land use regulations or zoning ordinances and, thus, render those municipal regulations and ordinances void with respect to HASD.[11]

In response, the Township first contends that HASD has waived this argument because it failed to raise the statutory provisions of section 775 of the School Code before the trial court and, instead, presents this argument for the first time to this court. Moreover, the Township maintains that, even if section 775 were applicable, that section, by its terms, clearly requires zoning approval.

---

**11.** Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933, replaces section 63 of the Act of May 28, 1937, P.L. 1019, formerly 46 P.S. § 563, repealed by the Act of Dec. 6, 1972, P.L. 1339. Like the former section, section 1933 provides that where a general provision in a law conflicts with a special provision in the same or another law, the two should be construed to give effect to both. However, if the conflict is irreconcilable, the special provision will prevail as an exception to the general provision, *unless it is manifestly apparent that the* legislature intended the general provision to prevail.

In *Pemberton Appeal*, the court relied upon former 46 P.S. § 563 to support its holding that

section 702 of the School Code precludes a municipality from limiting, by zoning ordinances, the statutory grant of discretion to school directors to choose the location of school grounds. In order to apply this same reasoning here, HASD would have us equate the authority of school directors to lease school buildings to non-school-related organizations, as set forth in section 775 of the School Code, with the specific power provided school directors in section 702 of the School Code to determine the location and amount of real estate required for a school, even investing the school district with the power to acquire such land by condemnation. We are unpersuaded that sections 702 and 775 of the School Code are comparable.

■ Even assuming that HASD has not waived this issue, we would agree that the statutory authority granted school districts pursuant to section 775 of the School Code is not the type intended by the State to preempt municipal zoning regulations. The General Assembly delegated specific exclusive powers to school districts as a means of fulfilling the constitutional mandate to provide a thorough and efficient system of public education for the Commonwealth. Because purely non-school-related activities are involved in HASD's application, requiring HASD to comply with the ZHB's limitations in this case would not adversely affect HASD's ability to carry out its vested responsibilities.[12] In this respect, we can derive guidance from *Skepton v. Borough of Northampton,* 87 Pa.Cmwlth. 24, 486 A.2d 1022 (Pa.Cmwlth.1985). In that case, a school district and contractor sought a declaratory judgment to determine whether the School Code preempted local regulations of a school construction project. We affirmed the trial court decision that local regulations were not preempted, stating:

A local ordinance is...superceded to the extent it contradicts or is inconsistent with a statute that is not explicitly pre-emptive. Municipalities, however, pursuant to their subordinate police power, may promulgate supplemental or additional regulations that are reasonable and do not offend the spirit of state regulatory provisions.... The School Code contains no explicit pre-emption language.... By implication the Department regulations permit local regulation of school building construction that is supplemental to, or consistent with, state standards.

*Id.* at 1024 (citations omitted). Because the School Code has no specific preemptive mandate allowing the use of school property for non-school-related activities, such unrestrict-ed use of school property by HASD would frustrate the Township's zoning scheme designed to promote and protect the health, safety and welfare of Township residents. Therefore, HASD must abide by the ZHB's limitations to use the hardball field for school-related activities only. *See County of Venango v. Borough of Sugarcreek Zoning Hearing Board,* 534 Pa. 1, 626 A.2d 489 (1993).

HASD also contends that section 305 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10305, stands for the proposition that the ZHB's restrictions on the use of the hardball field are merely recommendations, and, thus, the ZHB's attempt to make them mandatory is contrary to law. Section 305 of the MPC provides:

Following the adoption of a comprehensive plan or any part thereof by any municipality or county governing body, pursuant to the procedures in section 302, any proposed action of the governing body of any public school district located within the municipality or county relating to the location, demolition, removal, sale or lease of any school district structure or land shall be submitted to the municipal and county planning agencies for their recommendations at least 45 days prior to the execution of such proposed action by the governing body of the school district.

53 P.S. § 10305 (footnote omitted). Based on this language, HASD contends that a school district need only submit proposed actions to a municipality to get a recommendation, but that the school district remains free to accept that recommendation or to reject it.

■ On the other hand, the Township and the ZHB contend that HASD's reliance on section 305 of the MPC for the proposition

---

12. Indeed, in *School District of Philadelphia,* the court determined that, in constructing a new school building, the school district had to comply with the City of Philadelphia's (City) zoning regulation concerning off-street parking. The court reasoned that the prohibition imposed on the City against the exercise of powers contrary to, or in limitation of, other acts of the General Assembly regarding the regulation of public schools applies only to substantive matters of state-wide concern. The court then concluded that the requirement of off-street parking facilities was not among the areas of state-wide interest that the legislature intended to protect from local interference when it denied cities the power to regulate public schools. Similarly, we do not believe that the legislature's interest in giving school districts control over school buildings and grounds extends to the use of those facilities for non-school-related activities.

that *ZHB* restrictions are merely recommendations is misplaced. Although acknowledging that this section of the MPC requires a school district to submit proposed actions to municipal and county planning agencies for recommendations which are purely advisory, the Township and the ZHB maintain that section 305 of the MPC is inapplicable to zoning hearing boards of municipalities. We must agree with this reasoning because to conclude otherwise would make it impossible to require a school district to ever comply with any local land use regulation or zoning ordinance. We do not believe that the legislature intended such a result. Further, the fact that our courts, under particular circumstances, have required school districts to yield to local zoning regulations in carrying out their plans indicates that HASD's contention is incorrect.

Accordingly, for the foregoing reasons, we affirm.

### ORDER

AND NOW, this 9th day of November, 1998, the order of the Court of Common Pleas of Luzerne County, dated December 15, 1997, is hereby affirmed.