# NORTHAMPTON AREA SCHOOL DISTRICT, Appellant,

v.

# EAST ALLEN TOWNSHIP BOARD OF SUPERVISORS.

Commonwealth Court of Pennsylvania.

Argued April 2, 2003.

Decided May 14, 2003.

---

John E. Freund, III, Bethlehem, for appellant.

John W. Ashley, Allentown, for appellee.

Before: COLINS, President Judge, and SIMPSON, Judge (P), and MIRARCHI, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal by Northampton Area School District (School District), we are asked to decide whether the East Allen Township Board of Supervisors (Board) erred when it denied the School District's request for conditional use approval to permit construction of a new high school. Because we agree the Public School Code

(School Code)[1] does not interfere with local land use regulations and the School District's proposal violates the East Allen Township Zoning Ordinance (Ordinance), we affirm.

The School District owns 92.3 acres of land situated north of Nor–Bath Boulevard and east of Seemsville Road in East Allen Township (Subject Property). The Subject Property is partially in the Township's Agricultural Rural/Residential (A/RR) district, 51.69 acres, and partially in the Conservation (C) district, 40.63 acres. The School District proposed to construct a high school of approximately 350,000 square feet, which would accommodate 2,200 students and 115 employees. The School District intends to locate approximately 25% of the building in the C district.

▇ The School District submitted to the Board an application for conditional use approval. The application sought conditional use approval for the entire parcel. Reproduced Record (R.R.) 91a. A school is permitted by conditional use in the A/RR district, but is not permitted in the C district. After a hearing, the Board denied relief, and the School District appealed. It later amended its appeal to include a mandamus action to compel issuance of the relief and damages occasioned by the Board's delay. The School District later filed a motion for summary judgment on its mandamus claim. Ultimately, the trial court dismissed the land use appeal and denied the motion for summary judgment. The School District appealed.[2]

The School District first asserts the Board erred in failing to approve the conditional use application. It contends the Board is preempted from denying relief by Section 702 of the School Code. That section provides "the location and amount of any real estate required by any school district for school purposes shall be determined by the board of school directors of such district...." 24 P.S. § 7–702. In addition, the School District relies on mature authority. *See, e.g., Pemberton Appeal,* 434 Pa. 249, 252 A.2d 597 (1969) and *Sch. Dist. of Pittsburgh v. City of Pittsburgh,* 23 Pa.Cmwlth. 405, 352 A.2d 223 (1976).

In *Pemberton Appeal,* our Supreme Court was asked whether a municipality has authority to exclude schools in a zoning district. There, the zoning hearing board prohibited a school district from erecting a school within a zoning district in which schools were not permitted. The Court held the power granted to school districts pursuant to the School Code prohibited a township from "zoning out" schools in a district. In deciding *Pemberton Appeal,* the Court "considered all the circumstances of the cases, balanced the interests of the parties, and decided the [case] on the apparent equities of the situation." *Dep't of Gen. Serv. v. Ogontz Area Neighbors Ass'n,* 505 Pa. 614, 627, 483 A.2d 448, 454 (1984).

In *Sch. Dist. of Pittsburgh,* this Court held a school district must apply for all applicable zoning permits, as would any developer. We distinguished between use requirements, to which school districts were not subject, and local building requirements, which are applicable. There, because the School District of Pittsburgh complied with zoning and building require-

---

**1.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

**2.** Where, as here, no additional evidence was presented after the Board's decision, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997).

ments, it had a clear entitlement to issuance of building, occupancy, and land operations permits, and was not subject to use restrictions.

More recent authority, however, is not supportive of preeminence. *See, e.g., Ogontz; Council Rock Sch. Dist. v. Wrightstown Township Zoning Hearing Bd.,* 709 A.2d 453 (Pa.Cmwlth.1998). In *Ogontz,* our Supreme Court held that local and Commonwealth agencies are bound by use regulations of the municipality in which their projects are located. Significantly, the Court opined the legislative directive in Section 702 of the School Code for school districts to "locate and determine" the site of their schools relates simply to planning. By implication, this legislative directive does not preempt local zoning concerns. *Id; see also County of Venango v. Borough of Sugarcreek, Zoning Hearing Bd.,* 534 Pa. 1, 626 A.2d 489 (1993) (legislative authority for county commissioners to "purchase or take" land for creation of a county prison does not establish a clear legislative intent that use of county property may be made without regard to local land use regulations). While not overruling *Pemberton Appeal,* the Court expressly abandoned its prior reasoning, stating:

> [w]hatever virtue there may be in this approach, it has the disability of leading to uncertain results at every level. This, in turn, fosters layer upon layer of litigation, tying up land, the courts and Commonwealth agencies for years.... Apart from the inevitable litigation which results from the knowledge that the next court might "balance" differently than the last, the real difficulty with the balancing approach is that it has nothing to do with legislative intent. Rather, it

amounts to a judicial determination that since the legislature did not provide for the situation at hand, the courts will. It seems to us a better approach to return to the original task of determining legislative intent.

*Ogontz,* 505 Pa. at 627, 483 A.2d at 454–55.

The Court employed a two-step analysis for conflicting statutes. The first step requires a reviewing court to determine which governmental entity the General Assembly expressly intended to be preeminent. *Id.* In the absence of this express legislative mandate, the second step requires the court "to determine legislative intent as to which agency is to prevail ... turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia,* of the consequences of a particular interpretation." *Id.* at 628, 483 A.2d at 455.[3]

■ Taking the first step of *Ogontz* analysis here, we discern no clear, express intent that Section 702 of the School Code preempt a local zoning ordinance. The statute merely authorizes the school district to "locate and determine" the site of its school. 24 P.S. § 7–702. As noted, " '[l]ocate and determine' are merely words relating to planning." *Ogontz,* 505 Pa. at 627, 483 A.2d at 454. Consequently, Section 702 of the School Code contains no explicit mandate preempting the Ordinance. *Compare Olon v. Dep't of Corr.,* 534 Pa. 90, 626 A.2d 533 (1993) (Legislature clearly expressed intent to override zoning ordinance where legislation specified property to be acquired and specific use of that property).

We must, therefore, take the second step of the *Ogontz* analysis and ascertain legislative intent by considering the conse-

---

**3.** *Ogontz* makes application of the local zoning ordinance the rule absent evidence of a legislative intent to preempt zoning regula-

tions. 1 Robert S. Ryan, *Pennsylvania Zoning Law and Practice* § 3.3.14 (1998).

quences of each interpretation. If the School Code were preeminent, it would frustrate the Township's zoning scheme in every case where a Township land use plan conflicted with a School District plan. If, conversely, land use regulations were to prevail, the School District's power to "locate and determine" the site of its school would not necessarily be frustrated, for it is possible to exercise this power in accordance with local land use plans by constructing the school on a portion of the parcel zoned to accommodate this use. This resolution "would give . effect to the legislative mandates of both governmental entities, a consequence which, absent more certain legislative direction, seems advisable." *Ogontz*, 505 Pa. at 628, 483 A.2d at 455.

This approach is consistent with our decision in *Council Rock Sch. Dist.* There, we held a school must demonstrate its proposed school complies with the standards for a special exception set forth in a zoning ordinance. Notably, we stated:

> Since *Pemberton Appeal* and our holding in *City of Pittsburgh* ... the Supreme Court has revisited the issue of resolving conflicts between the powers of Commonwealth entities to utilize real property pursuant to statutory mandate and local zoning regulations. Although the Supreme Court has not overruled the holding of *Pemberton Appeal,* it has shed doubt upon whether a school district is exempt from use regulations regarding the erection of its schools.

*Id.* at 457. We further opined:

> Clearly, a school district is required to comply with standards and conditions set forth in a zoning ordinance pursuant to *School District of Philadelphia [v. Zoning Bd. of Adjustment,* 417 Pa. 277,

207 A.2d 864 (1965)] and *School District of Pittsburgh. Ogontz* and *County of Venango* suggest further that local use regulations may apply as well. The School Code provides no stronger mandate to school boards than that provided to the entities in *Ogontz* and *County of Venango* where the entities were each held subject to local use restrictions. *Id.* at 458–59.

Based on recent authority, we discern no error in the Board's determination that Section 702 of the School Code does not preempt the Ordinance. *Ogontz; Council Rock.* Consequently, the School District needed to obtain conditional use approval.

The School District also contends the Board improperly applied the standard for a conditional use by failing to recognize a rebuttable presumption in favor of the applicant. Further, it asserts its proposal complies with the Ordinance.

A conditional use is one specifically recognized by the legislature as consistent with the zoning plan. *Bailey v. Upper Southampton Township,* 690 A.2d 1324 (Pa.Cmwlth.1997). As such, it is presumed the particular type of use does not, of itself, adversely affect public interest. *Id.* Therefore, a conditional use application should be granted unless it is proven the impact on the public is greater than that which might be expected in normal circumstances. *Id.*

In addressing an application for a conditional use,[4] a zoning board must employ a shifting burden of persuasion. *Sheetz, Inc. v. Phoenixville Borough Council,* 804 A.2d 113 (Pa.Cmwlth.2002). First, the applicant must persuade the board its proposed use satisfies the ordi-

---

4. Because the law regarding conditional uses and special exceptions is virtually identical, the burden of proof standards are the same for both. *Sheetz, Inc. See also* 1 Robert S. Ryan, *Pennsylvania Zoning Law and Practice* § 5.1.4 (1992).

nance's objective criteria. *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Township*, 808 A.2d 1014 (Pa.Cmwlth. 2002). Once it does so, a presumption arises that the proposed use is consistent with the general welfare. *Id.* The burden then shifts to objectors to rebut the presumption by proving, to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use. *Id.* Mere speculation as to possible harm is insufficient. *Id.*

■ Here, to obtain conditional use approval an applicant must demonstrate its proposal complies with Section 315 D of the Ordinance. Specifically, a proposal must be:

1. *In conformance with* the spirit, purposes, intent and *all applicable requirements of this Ordinance.*

2. *In conformance with all other applicable provisions of all other Township Ordinances.*

3. In accordance with the Township Comprehensive Plan.

4. In accordance with all applicable State and Federal laws, regulations and requirements.

5. Suitable for the particular location in question.

6. Not detrimental to the public health or welfare.

R.R. 86a (emphasis added).

The Board determined the School District's proposal violated various provisions of the Ordinance. Most important for present purposes, the Board determined a significant portion of the proposed school is within the C district, which does not permit a school.

As correctly stated by the Board, a school is not permitted by conditional use or otherwise in a C district. Section 305 of the Ordinance. Further, pursuant to Section 305 A of the Ordinance:

[t]he purposes of the Conservation District are to protect and preserve the scenic, recreational and environmental resources in the Township and to provide for the orderly development of the Township. The predominant land uses in the C district are forest land and other open space uses on steep slopes, wet soils, or stream valleys. The regulations for the C District are designed to protect these land uses from spoliation and to channel development to more appropriate areas of the Township.

Section 305 A of the Ordinance.

The Board here found:

27. Based upon a review of the plan, it appears that at least 25% of the school building itself will be located in the [C] District, although the applicant presented no testimony with regard to the specifics of building coverage by acreage in the [C] District.

R.R. 73a. The Board's finding is supported by substantial evidence. Specifically, William Lee, the project engineer, testified that 40.639 acres of the Subject Property lie within the C district. R.R. 11a. He further testified that the proposal contemplates 25% of the actual building be placed in the C district. *Id.* As a result, the Board properly found the School District's proposal violates the Ordinance.[5]

---

**5.** At oral argument, the School District asserted a separate application for a variance from the C district requirements was proceeding contemporaneously before the Township's zoning hearing board. Thus, it argued, the Board exceeded its authority by considering the portion of the Subject Property in the C district. The record, however, reveals no reference to a variance application before the zoning hearing board. The transcript of the Board hearing contains no mention of a separate variance application. Moreover, in its

The finding that a significant portion of the proposed school building is planned for a zone which does not accommodate that use is fatal to the School District's application. While we agree with the School District that other Ordinance departures are either minuscule or unsupported in the record, this finding is material and mortal. Based on this finding, we affirm.

### ORDER

AND NOW, this 14th day of May, 2003, the order of the Court of Common Pleas of Northampton County is hereby affirmed.

conditional use application, the School District sought relief for the entire parcel. R.R. at 91. Consequently, we reject this argument.