778 A.2d 1205

**HAZLETON AREA SCHOOL DISTRICT, Appellant,**

**v.**

**ZONING HEARING BOARD of Hazle Township, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 31, 2000.

Decided Aug. 22, 2001.

Edward P. McNelis, Hazelton, for Hazelton Area School District.

Charles R. Pedri, Laputka and Pedri, Hazelton, for Hazel Township and Frank J. Skokoski, Jr., for Zoning Hearing Board of Hazel Tp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## *OPINION*

CASTILLE, Justice.

This Court granted allocatur to consider: (1) whether the authority granted to a school district under the Public School Code to allow its facilities to be used for non-school-related activities preempts the powers to provide for the health, safety and general welfare of the community granted to a local zoning hearing board under the Municipalities Planning Code; and (2) whether the zoning board's use restrictions are merely recommendations, not binding upon the school district.

Appellant Hazelton Area School District ("School District") is a second class school district located within Hazel Township, Luzerne County. On February 12, 1990, appellee Zoning Hearing Board of Hazel Township ("Board") granted a special exception to the School District for the construction of a senior high school in an area zoned residential. On February 15, 1993, the Board granted variances and accessory uses for the construction of adjacent athletic fields and tennis courts. In

granting the variances, the Board placed certain restrictions on the design of the fields to minimize their impact on the surrounding area, including requiring that no exterior lighting be installed, trees be planted to screen a neighboring property, no lavatory facilities be built, no dugouts and scoreboards be constructed on the ball fields, and the fields not be utilized for football practice.

On April 4, 1994, the School District submitted an application to the Board seeking a waiver of some of the restrictions in the February 15, 1993 variance order. Specifically, the School District sought to add certain amenities to its baseball field, including dugouts, water fountains, a scoreboard and a backstop. At a hearing, neighbors expressed concern with the proposal. In response to these concerns, a School District official stated that the baseball field would only be used for school-related purposes. The Board granted the request on April 25, 1994, but limited the use of the baseball field to team practice and interscholastic competition. The order stated: "Upon approved completion of the aforementioned structures and dimensions, it is understood that the baseball field can then be used for practice and interscholastic competition." [1]

Almost two years later, on April 10, 1996, the School District submitted another application to the Board requesting that the April 25, 1994 variance be amended and modified to allow the School District to permit its fields to be used for non-school-related baseball games. The proposal would allow the School Board to rent the field to an unspecified number of organizations for baseball games and practices that could start in the afternoon and continue until dark.[2] Again, certain of the neighbors raised concerns with the proposal. After a

1. The Commonwealth Court noted that the order does not explicitly exclude other uses of the field; however, the parties apparently agree that the language in the order restricts the use of the baseball field to school practice and competition.

2. A representative of one organization requesting to use the baseball field testified at the hearing that his organization proposed using the field almost every evening for practices or games. The organization, which represented a baseball league for 18 and 19–year olds, scheduled fifty to sixty games spanning the months of May through October.

public hearing, the Board denied the request. The Board specifically found that residential structures and properties adjacent to the athletic field would be adversely affected by the proposed expanded use. The Board also noted that the School District had failed to submit guidelines to the Board concerning the management of traffic levels, availability of parking spaces and bathroom facilities, and provision of security services at the field.

The School District appealed to the Court of Common Pleas of Luzerne County, maintaining that the Board's decision was arbitrary, capricious and an abuse of discretion and that the decision improperly preempted the School District's statutory authority to manage its properties pursuant to the School Code, 24 P.S. § 7–101 *et seq.* The School District also claimed that the Board's decision should be deemed merely advisory and not binding on it. The Court of Common Pleas affirmed the order of the Board.

The School District thereafter filed a timely appeal in the Commonwealth Court, which affirmed, reasoning that the legislative powers exclusively vested in the School District were those necessary to meet its educational duties. 720 A.2d 220, 225 (Pa.Cmwlth.1998). Because purely non-school-related activities were involved in the School District's application, complying with the Board's limitations did not interfere with the School District's vested educational responsibilities.[3] Relying on its decision in *Skepton v. Borough of Northampton*, 87 Pa.Cmwlth. 24, 486 A.2d 1022 (1985), the court further noted that, "[b]ecause the School Code has no specific preemptive mandate allowing the use of school property for non-

3. The School District also argued to the Commonwealth Court that the order restricted its use of the fields for *school*-related activities. The Commonwealth Court properly found that the School District had failed to raise this issue below, *i.e.,* the School District requested the modification of the variance for non-school-related activities and this was the issue addressed by the Board. Furthermore, the Board concedes in its brief to this Court that the School District "has the authority to regulate the use of the fields ... with regard to activities related to the school program." Appellee's Brief at 6. Thus, this Court will consider only the disapproval of the modification of the variance respecting non-school-related activities.

school-related activities, such unrestricted use of school property by [the School District] would frustrate the Township's zoning scheme designed to promote and protect the health, safety and welfare of Township residents." 720 A.2d at 225.

On appeal from the Commonwealth Court's decision, the School District relies upon § 7–775 of the Public School Code, which provides, in pertinent part, that:

The board of school directors of any district may permit the use of its school grounds and buildings for social, recreation, and other proper purposes, under such rules and regulations as the board may adopt. The board shall make such arrangements with any city, borough, or township authorities for the improvement, care, protection, and maintenance of school buildings and grounds for school, park, play, or other recreation purposes, as it may see proper. Any board of school directors may make such arrangements as it may see proper with any officials or individuals for the temporary use of school property for schools, playgrounds, social, recreation, or other proper educational purposes, primaries and elections, and may permit the use of any school building for holding official meetings of the governing authorities of corporate or politic[al], governmental or quasi-governmental bodies, created by authority of any act of Assembly. The use thereof shall not interfere with school programs and shall be subject to reasonable rules and regulations adopted by the board of school directors.

The board of public education or the board of school directors of any school district shall have power and authority to lease any of their respective school buildings or athletic fields to any reputable organization or group of persons for charitable purposes, subject to such charges as the board shall consider proper to reimburse it for any costs resulting from the leasing of such school buildings or athletic fields. . . .

24 Pa.C.S. § 7–775. The School District argues that § 7–775 specifically authorizes it to permit its fields to be used for non-school-related activities and that the legislative grant is "pre-eminent" as against any conflicting legislation. The School

District maintains that the statute, on its face, reveals a legislative intention that it is the School District alone which may decide how its facilities are to be used; thus, the School District asserts that this statute preempts any conflicting local zoning ordinance which attempts to restrict the School District's power. The School District likens its power regarding use of its facilities to its power to determine the location of school buildings—a power which, it argues, this Court has recognized cannot be limited by local zoning or land use restrictions. *See, e.g., School Dist. of Philadelphia v. Zoning Bd. of Adjustment,* 417 Pa. 277, 207 A.2d 864 (1965); 24 P.S. § 7–702.

In the alternative, the School District argues that, even if § 7–775 is not deemed to explicitly preempt local zoning restrictions, the statute at a minimum constitutes specific legislation and thus prevails over the Board's conflicting general statutory powers.[4] *See Appeal of Pemberton,* 434 Pa. 249, 252 A.2d 597 (1969).

The Board counters that § 7–775 provides no explicit mandate preempting the zoning ordinance and, accordingly, the powers of the Board to provide for the health, safety and general welfare of the community are not preempted here. The Board further argues that § 5–551(a) and (c) of the School Code provide that the School District is only free to regulate school property with regard to *school-related activities* and, because the requested use is unrelated to school activities, there is no preemption of the Board's authority.[5]

---

**4.** The Board's powers derive from the Municipalities Planning Code. Section 10912.1 of that Code provides:

> Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purpose of this act and the zoning ordinance.
>
> 53 P.S. § 10912.1.

**5.** Sections 5–511(a) and (c) of the Public School Code provide that:

Accordingly, the Board retains its power, conferred under the Municipalities Planning Code, to regulate land use.[6]

■ Because this appeal presents a question of statutory interpretation regarding two allegedly conflicting statutes, our standard of review is plenary. *See Commonwealth v. Baker*, 547 Pa. 214, 690 A.2d 164 (1997).

■ In *Commonwealth, Dep't of Gen. Serv. v. Ogontz Area Neighbors Ass'n*, 505 Pa. 614, 483 A.2d 448 (1984), this Court noted that statutes governing different state-created instrumentalities present a potential conflict that:

> is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and, generally, the task of courts in these cases is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have preeminent powers. The problem, essentially, is one of statutory interpretation.

*Id.* at 622–23, 483 A.2d at 452 (citation omitted). The Court employed a two-step process for analyzing conflicting statutes. The first step requires the reviewing court to determine, through examination of the statutes, which governmental enti-

(a) The board of school directors in every school district shall prescribe, adopt and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical and other activities *related to the school program*, including raising and disbursing funds for any or all of such purposes and for scholarships.... (c) The board of school directors may (1) permit the use of the school property, real or personal, for the purposes of conducting any activity *related to the school program*, or by any school or class organization, club, society, or group....

24 Pa.C.S. § 5–511(a) and (c) (emphases added).

**6.** The Board also maintains that the School District did not preserve its claims regarding whether § 7–775 preempts local zoning ordinances. Our review of the record demonstrates that the School District adequately preserved that issue before the trial court. *See* Notice of Land Use Appeal.

ty, if any, the General Assembly expressly intended to be preeminent. *Id.* In the event there is no such express legislative mandate, the second step requires the court "to determine legislative intent as to which agency is to prevail . . . turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia,* of the *consequences* of a particular interpretation." *Id.* at 628, 483 A.2d at 455 (*citing* 1 Pa.C.S. § 1921(c)(6)) (emphasis added).[7]

In *Ogontz,* the Commonwealth Department of Public Welfare ("DPW") had applied for permits necessary to construct a two-story center for the mentally retarded. The Philadelphia Department of Licenses and Inspections ("L & I") denied the application finding that the proposed development was not permitted in the particular zoning district. This Court rejected the lower court's finding that there was specific preemption of the zoning ordinance under the Mental Health and Mental Retardation Act of 1966. Analyzing the claim under the second prong of the test above, this Court noted that the "consequences of deciding that the [DPW] should be preeminent . . . are that Philadelphia's zoning scheme would be frustrated. . . . On the other hand, if the city were to prevail, the [DPW]'s mandate to establish mental health facilities . . . would not necessarily be frustrated, for the loss of one location might well be compensated for by substitution of another." *Id.* at 628, 483 A.2d at 455. Accordingly, the DPW's statutory authority did not preempt the local zoning authority.

7. Section 1921(c) of the Statutory Construction Act provides that:
 When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
 (1) The occasion and necessity for the statute.
 (2) The circumstances under which it was enacted.
 (3) The mischief to be remedied.
 (4) The object to be attained.
 (5) The former law, if any, including other statutes upon the same or similar subjects.
 (6) The consequences of a particular interpretation.
 (7) The contemporaneous legislative history.
 (8) Legislative and administrative interpretations of such statute.
 1 Pa.C.S. § 1921(c).

Similarly, in *County of Venango v. Borough of Sugarcreek,* 534 Pa. 1, 626 A.2d 489 (1993), this Court found, again under the second prong of the *Ogontz* test, that there was no preemption of the local zoning law. 534 Pa. at 5, 626 A.2d at 490. Examining the consequences of finding one statute preeminent over the other under § 1921(c)(6), this Court found that provisions of the County Code authorizing the County to use County property for jails could not be "exercised without regard to local land use regulations." *Id.* at 6, 626 A.2d at 491. The Court reasoned as follows:

> The consequences of deciding that the County should be preeminent in this matter are that the Borough's zoning scheme would be frustrated in this case and in every other case where a County land use plan conflicted with the Borough plan and the County was carrying out ... one of its enumerated powers 'as authorized by law.' On the other hand, if the Borough were to prevail, the County's power to locate jails and other facilities would not necessarily be frustrated, for it is possible to exercise this power consistent[ly] with local comprehensive land use plans by acquisition of other parcels zoned to accommodate such uses.

*Id.* at 7, 626 A.2d at 491–92.

Prior to *Ogontz,* when addressing preemption in school cases arising in other contexts, this Court held that zoning boards are not precluded from requiring school districts to comply with certain construction ordinances. In *School Dist. of Philadelphia, supra,* for example, the district had applied for a permit to construct a new school plant. The permit was denied because the school facilities did not meet the City's zoned off-street parking requirements. The district appealed to the Court of Common Pleas, which reversed, finding that the district was exempt from provisions of the City's zoning ordinances. This Court reversed, reasoning that the district was not exempted from the local building requirements, which had been enacted for the protection of the health, safety and welfare of the community. We held that the manner of construction of schools is not an aspect of education that had been preempted by the School Code. Instead, "[a]s we view

the term 'Regulating public schools[,'] this deals more with the quality of public education than with the physical structures required to provide it." *Id.* at 282, 207 A.2d at 867. We further held that, "[t]he building of school buildings [was] but a necessary incident to the fulfillment of the primary duty of educating the young." *Id.* at 282–83, 207 A.2d at 867–68 (*quoting Port Arthur Indep. Sch. Dist. v. City of Groves,* 376 S.W.2d 330, 334 (Tex.1964)). We then reasoned that:

> We regard state-wide interest, and thus the area protected from local interference by statute, to be centered in, for example, the number of hours that children must attend school and the types and emphasis of courses that shall be presented to them. We see no inherent state-wide interest in the fact that certain school buildings, because of local problems of congestion, should be so situated that space is available for off-street parking, or even that, because of overcrowded conditions, each building should be of only a certain height.... These are areas which the legislature did not intend to protect when it denied to cities the power to regulate public schools.

417 Pa. at 283, 207 A.2d at 868.[8]

On the other hand, in *Pemberton, supra,* this Court held that local zoning boards do not have authority to prevent school districts from complying with their statutorily mandated duty to educate students in appropriate school facilities. 434 Pa. at 254–55, 252 A.2d at 600. There, the Radnor Township School Authority had appealed the decision of the Board of Adjustment of Radnor Township, which had denied its request for a certificate of occupancy to use a tract of land

**8.** The Commonwealth Court employed similar reasoning in *Skepton, supra*—a case it relied upon in deciding this appeal. In *Skepton,* the appellant contractor began renovation of one of the school district's facilities without a borough permit. The borough sought to prohibit the continuation of the work. Skepton argued that the Fire and Panic Act, 35 P.S. §§ 1221 *et seq.,* the Public School Code of 1949, 24 P.S. §§ 1–101 *et seq.,* and the Administrative Code of 1929, 71 P.S. §§ 51–732, preempted local regulation of school construction. The court rejected Skepton's arguments, holding that "since the [Department of Education's] regulations and the borough's building code regulate predominately different concerns of school building construction, state and local powers are not in actual, material conflict." *Id.* at 1025.

for an elementary school on grounds that the proposed use was inconsistent with existing zoning restrictions. *Id.* at 250, 252 A.2d at 598. The Court rejected the zoning board's argument that *School Dist. of Philadelphia* established that the zoning board was empowered to regulate the location of schools. We stated that: "the instant ordinance does not involve the manner of construction of a school. It involves the more basic question of whether by its zoning regulations a township can exclude schools from certain areas." *Id.* at 254, 252 A.2d at 600. Relying on *dicta* in *School Dist. of Philadelphia,* we noted in *Pemberton* that the local authority could not "zone-out" schools entirely and held that "the Public School Code ... does indeed prevent the township from limiting, by its zoning ordinances, the statutory grant of discretion to school directors to choose the location of school grounds." *Id.* at 255, 252 A.2d at 600, *citing School Dist. of Philadelphia, supra,* at 289–90, 207 A.2d at 871.

When we decided *Ogontz,* we compared *Pemberton* with a decision from several years later, *City of Pittsburgh v. Commonwealth,* 468 Pa. 174, 360 A.2d 607 (1976). We noted that, although the grant of power to the school district in *Pemberton* was basically the same as the grant of power to the Bureau of Corrections in *City of Pittsburgh,* in the former case the school district's power prevailed over the local zoning power, whereas in the later case, it was the local zoning power that prevailed. After pointing out this discrepancy, we observed:

> [I]t is evident that the cognitive differences in the statutory language in the two cases are so slight that statutory language alone does not explain the difference in the results. Rather, it appears that the Court considered all the circumstances of the cases, balanced the interests of the parties, and decided the cases on the apparent equities of the situations.

*Ogontz, supra,* at 627, 483 A.2d at 454. In addition to the uncertainty and potential for instability, we acknowledged that this approach "has nothing to do with legislative intent. Rather, it amounts to a judicial determination that since the

legislature did not provide for the situation at hand, the courts will." *Id.* at 627, 483 A.2d at 455. Significantly, we then declared that: "It seems to us a better approach to return to the original task of determining legislative intent." *Id.* Thus, although we did not overrule *Pemberton,* we unmistakably indicated that we would no longer follow its "balancing" approach, turning instead to the rules of statutory construction to determine legislative intent.

■ This Court discerns no clear, express intent that § 7–775 must preempt a local zoning ordinance. The statute merely states that the School District may permit the use of school grounds and buildings for "social, recreational, and other proper purposes, under such rules and regulations as the board may adopt." Nothing in § 7–775 explicitly states that the School District is not subject to local zoning regulations. The fact that a school district is *permitted* under the School Code to allow its fields and facilities to be used for non-school-related activities does not mean that local authorities, acting pursuant to the Municipalities Planning Code, cannot have some say in how that permissive authority is exercised. A school is not an island: it necessarily serves a community function and exists as part of a community. So long as the local zoning authority does not interfere with the district's core function, there is nothing in the school legislation to restrict local authorities from seeking to blend the school into the community in a manner that protects the health, safety, and general welfare of the community.

Examination of the allegedly competing statutes under the second part of the *Ogontz* test corroborates that there is no preemption here. The School Code discharges a constitutional obligation to provide an efficient education for the children of this Commonwealth. Specifically, Article III, § 14, of the Pennsylvania Constitution provides that: "the General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools...." "The purpose of the School Code is to establish a thorough and efficient system of public education, to which every child has a right." *Philadelphia Fed. of Teachers v. Board of Educ.,* 51 Pa.

Cmwlth. 296, 414 A.2d 424, 426 (1980). *See also Common-wealth ex rel. Hetrick v. Sunbury Sch. Dist.*, 335 Pa. 6, 6 A.2d 279 (1939).

 The legislative authority to permit school facilities to be used for non-school-related activities is not essential to the School District's mandated duty to educate the Common-wealth's children. The permissive authority under § 7–775, at best, is related to its maintenance and control of its proper-ties—not its core educational function. This is not to say that the permisive power is unimportant: § 7–775 permits the School District to make constructive use of its facilities when those facilities would otherwise sit idle. The incidental power granted, however, cannot be exercised at the expense of the health, safety and general welfare of the community in which a particular school is located. To hold otherwise would allow ball fields normally precluded from being built at all because of adverse neighborhood effects to be built and then used for non-school functions merely because the school district is the owner. At least in the manner in which the School District's challenge has been preserved here, the local regulation at issue reserves entirely to the School District the power to control its property for school-related-activities. To conclude that the School District has *carte blanche* respecting non-school-related activities, with no obligation to exercise the same diligence as the zoning hearing board to consider the health, safety and general welfare of the community, is not a legitimate interpretation of the Public School Code.

 The School District's power to manage its properties may be preemptive where that power is incidental and essen-tial to its educational mission. *See Pemberton, supra.* How-ever, where, as here, the power is merely incidental to the management of its facilities and is unrelated to its constitu-tional and statutorily-mandated educational duty, the statutory power does not preempt the independent and equally weighty authority of the local zoning authority. Accordingly, we hold that the School District's authority under § 7–775 to allow the

use of its fields for non-school-related activities must be exercised consistently with local zoning regulations.

Furthermore, this Court is unpersuaded by the School District's separate argument that § 7–775 is specific legislation, which preempts the general legislation empowering the Board. The Statutory Construction Act provides, in relevant part, that:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933. Here, as the discussion above illustrates, *the two sections can be construed so as to give effect to both.* The permissive power granted in § 7–775 can be exercised in a manner that is perfectly consistent with local zoning regulations. The School District retains the general power to select the manner in which its grounds and buildings, including the baseball field, will be used for non-school-related activities. The Board's denial of the application at issue is limited to the single proposed use, *i.e.*, the School District's proposal to rent the baseball field to at least one community group for an unspecified number of baseball games and practices that could continue after dusk, without suggesting any plan concerning parking, traffic and security. The Board's denial of the School District's application does not prevent the School District from using the field for school purposes, or even from proposing other non-school-related uses that satisfy the Board's concerns about health, safety and welfare.

■ Next, citing the Municipalities Planning Code, 53 P.S. § 10305, the School District argues that, because its comprehensive plan is only subject to the "recommendations" of the municipal and county planning agencies, the School District must seek only the *recommendation* of the Board and that

that recommendation is not binding upon the School District. We disagree.

Section § 10305 provides that:

Following the adoption of a comprehensive plan or any part thereof by any municipality or county governing body, pursuant to the procedures in section 302, any proposed action of the governing body of any public school district located within the municipality or county relating to the location, demolition, removal, sale or lease of any school district structure or land shall be submitted to the *municipal and county planning agencies for their recommendations* at least 45 days prior to the execution of such proposed action by the governing body of the school district.

(Emphasis added). Under the Statutory Construction Act, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903. The plain language of § 10305 makes clear that qualifying comprehensive plans are subject to the recommendations of the *municipal planning agency.* It does not speak to the *municipal zoning hearing board.* Since this provision applies only to the planning commission, it is not relevant to cases such as this one, falling within the zoning hearing board's jurisdiction. Indeed, to hold otherwise would negate all those cases where the courts have found that schools are subject to certain zoning restrictions. *See, e.g., School Dist. of Philadelphia, supra; Skepton, supra; Council Rock Sch. Dist. v. Wrightstown Twp. Zoning Hearing Bd.,* 709 A.2d 453 (Pa.Cmwlth.1998). Accordingly, we reject this claim.

For the foregoing reasons, the order of the Commonwealth Court is affirmed.