**SAUCON VALLEY SCHOOL DISTRICT, Petitioner,**

v.

**ROBERT and Darlene O., Parents and natural guardians of Jason O., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2001.

Decided Oct. 30, 2001.

---

Michael J. Connolly, New Britain, for petitioner.

Elizabeth Kapo, Bethlehem, for respondents.

Before: KELLEY, Judge,
FLAHERTY, Senior Judge, and
JIULIANTE, Senior Judge.

FLAHERTY, Senior Judge.

Saucon Valley School District (the District) petitions for a review of a determination by the Department of Education, Special Education Due Process Appeals Review Panel (Panel) which reversed the Hearing Officer's order regarding the program of education for Jason O. (Student).[1] For the reasons contained herein we reverse.

Student is a 17–year–old gifted high school pupil who resides in Saucon Valley School District. Student's parents and the District did not agree on Student's Individualized Educational Program (IEP).[2] As a result, in May 2000, a hearing was conducted to resolve whether the IEP was truly individualized for Student and whether Student would receive graduation credit

---

1. This action has been initiated on behalf of Jason O. by Robert and Darlene O., his parents and natural guardians.

2. An IEP is a written plan for the appropriate education for an exceptional student. 22 Pa. Code 14.31(b).

for courses taken in middle school.[3] The Hearing Officer determined that the IEP was defective and ordered the District to prepare an appropriate IEP. Further, the Hearing Officer ordered that Student be given graduation credit for two of the four pre-high school courses he completed. This decision was not appealed.

Pursuant to the Hearing Officer's order, the parties met again in August of 2000 to develop a mutually agreeable IEP. During the meeting, Student's parents were asked to leave and members of the IEP team continued to meet to develop a new IEP.[4] The new IEP recommended that Student be placed in the 2001–2002 graduation class but Student would be allowed to graduate at mid-year if he completed the 28.5 credits required for graduation. The outcome of this meeting was also contested, so a second hearing was conducted in October 2000 concerning the revised IEP. The Hearing Officer noted that Student's primary issue was whether he should graduate in 2002, as recommended in the IEP. The IEP was affirmed and the District's plan for Student's graduation in 2002 was deemed appropriate.

The Hearing Officer's decision was appealed to the Panel pursuant to 22 Pa. Code § 14.64(m) ("The decision of the impartial hearing officer may be appealed to a panel of three appellate hearing officers. The panel's decision may be appealed further to a court of competent jurisdiction"). The Panel concluded that Student's IEP was so procedurally and substantively flawed that it denied Student a free and appropriate public education (FAPE). Moreover, the Panel's *opinion* discussed "appropriate remedies", which included an award of compensatory education to Student, use of a third party to develop an IEP and remedial education for the District's employees. Reversing the Hearing Officer, the Panel *ordered* the following:

1. Jason shall be classified as a member of the class of 2000/2001. If he fails to complete the 25 credits required for graduation by the end of the summer of 2001, he shall be reassigned to the class of 2001/2002. If Jason completes the 28.5 credits required for graduation with this class at the end of the first semester of the 2001–2002 school year, he shall be allowed to graduate if he and his parents so request. (footnote omitted as not relevant).

2. Unless this opinion is appealed and as described in the preceding section, all Jason's current and prospective teachers, administrators, and supervisors who are in any way associated with Jason's education shall each complete at least 10 hours of in-service education.

3. Unless this opinion is appealed and as described in the preceding section, the District shall employ an expert to facilitate the development of a new and appropriate IEP for Jason. Jason's entire IEP team shall reconvene immediately to prepare a proper IEP that complies in each and every respect with the Commonwealth's requirements and this order.

**3.** When Student began high school in 1998, he entered the graduating class of 2001–2002. The number of credits required of members of the class of 2001–2002 was 28.5. Members of the class of 2000–2001 were required to complete 25 credits in order to graduate. Student wished to receive credit for pre-high school courses so that he could graduate in 2000–2001 with the lower 25 credit requirement.

**4.** The District superintendent contended that Student's parent acted in a threatening, menacing and abusive manner toward District staff at the August 2000 IEP meeting. The school principal terminated the parent's participation at the meeting as a result of this behavior. R.R. at 522a.

The District raises several issues before this Court. First, whether the IEP developed for Student denied him a FAPE. Next, whether the amount and type of compensatory education is incorrect. Finally, whether the Panel exceeded its authority when it re-classified Student to another graduation class, ordered the District to conduct in-service training for staff and hire an outside consultant to develop an IEP for Student.[5] As a preliminary matter, we must address whether the compensatory education issue is properly before us. In its *opinion*, the Panel stated that Student was entitled to an award of compensatory education. Further, it was discussed in the *opinion* that the District must provide five semesters of accelerated and enriching coursework in both mathematics and science. This "remedy", however, is not contained in the Panel's *order.*

■ The Hearing Officer did not deny compensatory education so we cannot infer that the Panel so ordered this remedy when it reversed the Hearing Officer. Nor does the language of the order incorporate by reference the compensatory remedy cited in the opinion. We note that remedies Nos. 2 and 3 reference the "preceding section" (*i.e.,* the opinion). Moreover, the introductory language of the order states that "the Hearing Officer's order is reversed, and those exceptions not addressed in this order are dismissed." We simply cannot affirm or deny an aspect of an order that does not exist. It is the final *order,* and *not* the *opinion* that permits this Court to exer-

cise jurisdiction over this issue. *See* 42 Pa.C.S. § 763(a).[6] Accordingly, this issue will not be addressed.

■ During oral arguments on September 12, 2001, Counsel for Student responded to a question from this Court advising that Student had already graduated from high school. Unless an actual case or controversy exists at all stages of the judicial process, a case will be dismissed as moot. *Pennsylvania Liquor Control Board v. Dentici,* 117 Pa.Cmwlth. 70, 542 A.2d 229 (1988). The only time this court will decide questions that have otherwise been rendered moot is when one or more of the following three exceptions to the mootness doctrine apply: 1) when the case involves questions of great public importance, or 2) when the conduct complained of is capable of repetition yet avoiding review, or 3) when a party to the controversy will suffer some detriment without the court's decision. *County Council of the County of Erie v. County Executive of the County of Erie,* 143 Pa. Cmwlth. 571, 600 A.2d 257, 259 (1991) (citing *Strax v. Department of Transportation, Bureau of Driver Licensing,* 138 Pa. Cmwlth. 368, 588 A.2d 87 (1991) and *Cytemp Specialty Steel Division, Cyclops Corp. v. Pennsylvania Public Utility Commission,* 128 Pa.Cmwlth. 349, 563 A.2d 593 (1989)).

Given the relatively accelerated pace that gifted students may advance through school and the time which lapses between a due process hearing, hearing officer decision, Panel decision and this Court's con-

---

5. Our scope of review from the decision of the Appeals Panel is limited to a determination of whether the adjudication is supported by substantial evidence, errors of law were committed or constitutional rights were violated. 2 Pa.C.S. § 704; *Brownsville Area School District v. Student X,* 729 A.2d 198, 199 (Pa. Cmwlth.1999).

6. Additionally, we note that there is nothing in the record that would suggest that the parties did not have the opportunity to petition the Panel for reconsideration or clarification of its order.

**1074**

sideration, the District has raised issues that are capable of repetition yet may escape appellate review because the procedural pace of review has been exceeded by a student's educational progress.[7] We, therefore, will address only the District's issues of whether the Panel's ability to order certain remedies exceeded its authority.

■ Article III, § 14, of the Pennsylvania Constitution provides that: "the General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools...." *Id.* "The purpose of the School Code is to establish a thorough and efficient system of public education, to which every child has a right." *Id.* (quoting *Philadelphia Fed. of Teachers v. Board of Education,* 51 Pa.Cmwlth. 296, 414 A.2d 424, 426 (1980)). The Public School Code of 1949 discharges a constitutional obligation to provide an efficient education for the children of this Commonwealth.[8] *Hazleton Area School District v. Zoning Hearing Board,* —— Pa. ——, ——, 778 A.2d 1205, 1213 (2001).

■ In addition, our state school system is charged with the ominous task of providing a free and appropriate public education (FAPE) to every child of school age in this Commonwealth. *Brownsville Area School District v. Student X,* 729 A.2d 198, 199 (Pa.Cmwlth.1999). Subsumed within that charge is the mandate that school districts identify children in need of special education. *See* 22 Pa.Code § 342.21 (relating to general public awareness and screening programs), and 22 Pa.Code § 342.52 (relat-

ing to public awareness programs regarding screening and identification of children). In Pennsylvania, special education is afforded to gifted children pursuant to Sections 1371 and 1372 of the Public School Code of 1949, 24 P.S. §§ 13–1371–1372. In addition to identifying gifted children, school districts must evaluate the child and prepare individual programs for each child placed in the special education program for the gifted. 22 Pa.Code §§ 14.1–14.2(d)(4)(8).

■ The District contends the Panel lacked the authority to order any of its remedies. In *Centennial School District v. Department of Education,* 517 Pa. 540, 551, 539 A.2d 785, 790–91 (1988), the Supreme Court recognized the broad delegation of power to the State Board of Education to promulgate regulations concerning the "proper education and training of all exceptional children." The General Assembly neither delegated nor withheld authority to *remedy* a violation of these regulations. *See* 24 P.S. § 13–1372(1) (Standards for Proper Education and Training of Exceptional Children); 24 P.S. § 26–2603–B (Powers and Duties of the Board). In addition to the lack of explicit remedial authority, the Board has failed to promulgate regulations delimiting the authority of the Panel. In *Big Beaver Falls Area School District v. Jackson,* 150 Pa.Cmwlth. 268, 615 A.2d 910, 915 (1992), a school district challenged the authority of the Panel to order compensatory education.[9] This Court stated:

---

**7.** In the matter *sub judice,* a hearing was first conducted in May 2000 regarding Student's IEP. District was ordered to develop another IEP but the District and Student could not agree on the IEP. Another hearing was conducted in October 2000 and the hearing officer rendered his decision in December 2000. The Panel decided the appeal in January 2001. Moreover, both parties requested and

received extensions of time to file briefs with this Court.

**8.** Act of March 10, 1949, P.L. 30, as amended, §§ 1–101—27–2702.

**9.** The issue in *Big Beaver Falls* concerned the denial of a FAPE under the Individuals with Disabilities Education Act (IDEA), which pro-

Compensatory education is an appropriate relief in the context of the IDEA because such an order "merely requires [the defendants] to belatedly pay expenses that [they] should have paid all along." *Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986) (citing *School Committee of Burlington v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). In *Lester H. [by Octavia P. v. Gilhool,* 916 F.2d 865 (3d Cir.1990)]*, because the school district failed to provide the student an appropriate educational placement for thirty months, the Third Circuit Court of Appeals affirmed the district court's award of thirty months of compensatory education for the student to be provided after he turned 21. *Id.* In *Brownsville Area School District v. Student X,* 729 A.2d 198, 200 (Pa.Cmwlth. 1999), we held that compensatory education is an appropriate remedy for gifted children alike when *a district fails to provide an adequate program.*[10] Accordingly, in the absence of statutory or regulatory delineation of the range of remedies available, the Panel was deemed to have the authority to order certain remedies for gifted students.

The District challenges the authority of the Panel to order all of Student's teachers, administrators and supervisors involved in his educational program to complete ten hours of in-service training by an expert in special education and special education law.[11] The District argues that the Panel is precluded from doing so because the General Assembly has already delegated authority for assessing and addressing the professional development of employees to the District. *See* Section 1205.1 of the Public School Code, added by the Act of December 15, 1986, P.L. 1602, *as amended* 24 P.S. § 12–1205.1.[12]

Section 1205.1(a) of the Public School Code requires that each school entity submit a three-year professional education plan to the Secretary of Education for approval. 24 P.S. § 12–1205.1(a). The plan is prepared by a committee consisting of representatives of teachers, administrators, educational specialists, local businesses, other individuals representing the community and parents of children attending a school in the District. *Id.* Section 1205.1(b). The plan is designed to meet the educational needs of the school entity and its professional employees. *Id.* Section 1205.1(c). The school entity is re-

---

vides a FAPE to all children with disabilities residing in Pennsylvania between the ages of 3 and 21. 20 U.S.C. § 1412(a)(1)(A). A child with a disability means a child with mental retardation, hearing impairments, speech or language impairments, visual impairments, serious emotional disturbance, orthopedic impairments, autism, traumatic brain injury, or other health impairments, or specific learning disabilities, and who needs special education by reason of the disability. *Id.* § 1401(3)(A)(i), (ii).

10. The FAPE, as required by federal statute, is not applicable to gifted children. The gifted education regulations were revised and reissued as Chapter 16 in December 2000 to draw a clear distinction between gifted education as required by the state and special

education as required by federal law. 30 Pa. B. 6330 (2000) creating 22 Pa.Code §§ 16.1— 16.65; *see also* 31 Pa. B. 3021 (2001) deleting 22 Pa.Code §§ 14.1–14.74, creating 22 Pa. Code §§ 14.101—14.162, deleting 22 Pa.Code Ch. 342.

11. Student's argument that the order for 10 hours of in-service is *de minimis* is not responsive to the issue of whether the Panel had the authority to order such a remedy.

12. We also note that during the pendency of this appeal, Chapter 16, the new gifted program regulations, *see* note 11 *supra,* were promulgated and now reference the school districts' statutory duty to provide in-service training for persons responsible for gifted education under Section 1205.1.

quired to review the plan annually to determine whether it continues to reflect the needs of the school, its strategic plan and the needs of its professional employees, students and community. *Id.* The plan is to be amended, as necessary, to ensure that the plan meets these needs. *Id.*

In contrast, Article XIII, Section 1372 of the Public School Code required the Board of Education to revise the special education regulations no later than March 1, 1990. *See* Section 5 of the Act of July 8, 1989, P.L. 253, which added Subsection 1.1 to Section 1372, 24 P.S. § 13–1372(1.1)(i). The revised regulations were required to "assure fiscal accountability, prudent management, appropriate education support services and special classes to meet the needs of pupils, and assurance of continued service to children receiving special education instruction and services …". *Id.* Section 1372(1.1)(i). Chapter 14 of the special education regulations require that "professional personnel shall consist of certified individuals responsible for identifying exceptional students and providing special education programs and related services in accordance with Article XI of the Public School Code of 1949, 24 P.S. §§ 11–1101—11–1192 [Professional Employees] and this title." 22 Pa.Code § 14.7(a). Student interprets these regulations, promulgated pursuant to the General Assembly's grant of rule-making pow-

er, to provide the Panel with the authority to order in-service training of the District employees.

■ The Pennsylvania Supreme Court has employed a two-step process for analyzing conflicting statutes.[13] *See Hazleton Area School District,* —— Pa. at ——, 778 A.2d at 1210.[14] The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent. In the event there is no such express legislative mandate, the second step requires the court "to determine legislative intent as to which agency is to prevail … turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia,* of the *consequences* of a particular interpretation." *Id.* at ——, 778 A.2d at 1210 (internal citations omitted) (emphasis in the original) (citing and quoting *Commonwealth Department of General Services v. Ogontz Area Neighbors Association,* 505 Pa. 614, 622–23, 483 A.2d 448, 452 (1984) (citing 1 Pa.C.S. § 1921(c)(6))).

Under the first step, we can discern no clear, express intent that the authority of the Panel to remedy a denial of a FAPE preempts the authority of the District under Section 1205.1 to administer the pro-

---

13. The Court noted that statutes governing different state-created instrumentalities present a potential conflict that:

> is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and, generally, the task of courts in these cases is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have pre-

eminent powers. The problem, essentially, is one of statutory interpretation.

*Hazleton Area School District,* —— Pa. at ——, 778 A.2d at 1210 (quoting *Commonwealth Department of General Services v. Ogontz Area Neighbors Association,* 505 Pa. 614, 622–23, 483 A.2d 448, 452 (1984)).

14. In *Hazleton,* the Court considered the conflict between the statutory authority of a school district to determine how its facilities could be used and the statutory authority of the local zoning board to regulate the use of property for the health, safety and general welfare of the community.

fessional development of employees. Further, nothing in Section 1205.1 explicitly states that the District is excluded from the scope of remedies available to the Panel. Therefore, we must proceed to the second step and consider the *consequences* of a particular interpretation.

■ Section 1205.1(c), states that the professional education plan developed by the District "shall be designed to meet the educational needs of that school entity and its professional employees."[15] 24 P.S. § 12–1205.1(c). Moreover, the plan may include "special education activities for professional educators whose area of assignment includes students with special needs". *Id.* Section 1205.1(c.1)(3)(vii). If we were to interpret the authority of the Panel, vis-à-vis the Board's authority to promulgate regulations for the proper education and training of exceptional children, to permit the Panel to order educator training/in-service as a remedy for a denial of an FAPE, then the consequence of this interpretation would not only usurp the power delegated by the General Assembly to the District to plan and provide for professional development but also frus-

trate several facets of Section 1205.1. The Panel's actions would not only drain the finite fiscal resources of the District; they would also circumvent representative participation in the planning process and effectively remove local and community input. *Cf.* 1 Pa.C.S. § 1933.[16] Accordingly, we conclude that the Panel's authority to order remedial training of the District's employees is preempted by Section 1205.1.

The District next argues that the Panel exceeded its authority by ordering the District to employ an outside expert to facilitate the development of a new IEP for Student.[17] Under the special education regulations, the District must establish and implement procedures to appoint an IEP team to develop a IEP for Student. 22 Pa.Code § 14.32(a). Each IEP team shall include persons who meet the following qualifications:

1) One or both of the student's parents.

2) The student, if 18 years of age or older, or if younger and the parents choose to have the student participate.

15. The only exception to the continuing professional development requirements is a professional educator not employed by a school entity who serves as an evaluator of a home education program. *Id.* § 12–1205.1(e).

16. Section 1933 of the Statutory Construction Act of 1972 states:
    Whenever a general provision in a statute shall be in conflict with a special provision in .... another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provision shall prevail and be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.
    1 Pa.C.S. § 1933. These statutes are not in conflict because each may be construed to give effect to both. The Board has the au-

thority to promulgate regulations for the proper education and training of exceptional children and, therefore, to establish the Panel. The courts in Pennsylvania have recognized the general power of the Panel to consider special education appeals and to grant compensatory education. *See e.g., Brownsville Area School District v. Student X,* 729 A.2d 198 (Pa.Cmwlth.1999). The District, however, has been given the power to plan and conduct continuing professional development. We do not find that these powers to be irreconcilably in conflict.

17. The text of the Panel's Opinion stated that this expert should 1) not be affiliated with the District; 2) hold a doctoral degree in special education, 3) have expertise in special education law; 4) have specialized experience in the education of gifted students; and 5) attend all IEP meetings until Student graduates.

3) A representative of the district, other than the student's teacher, who:

i) Is qualified to provide or supervise the provision of special education.

ii) Can ensure that the services specified in the student's IEP will be provided.

iii) Will serve as the chairperson of the IEP team.

4) One or more of the student's current teachers. If the student is newly enrolled, a regular teacher who provides instruction to students of the same age.

5) The persons who initiated the screening/identification process of the student.

6) A person who is familiar with the placement options of the district

7) A member of the IST [Instructional Support Team], if appropriate.

8) One or more members of the MDT which completed the most recent evaluation (or evaluation) of the student.

9) A person qualified to conduct a diagnostic examination of the students if a student is suspected of having a specific learning disability.

10) Other individuals at the discretion of either the parents or the district.

*Id.* The regulations clearly indicate that the *District is responsible* for the membership of the IEP team. Moreover, the regulations set forth the minimum membership of the IEP team.

■■■ The only deficiency the Panel found with the District's IEP team was that Student's parents were not present during the development of the IEP. The Panel's remedy that the District hire a special education expert was not an attempt to remedy non-compliance with the composition of the IEP team. Rather, the Panel's action would require the District to include members in excess of that established in the regulations. Although the Panel may have the implicit authority to remedy non-compliance with the special education regulations, it does not have the authority to impose requirements in addition to those in the regulations.[18]

Finally, the District states that the Panel cannot order Student's graduation with fewer credits than established by the District. "The General Assembly has vested local school districts with the authority to set up its own requirements for graduation from its schools and to confer academic degrees on those who successfully complete such requirements." *Woodland Hills School District v. S.F.*, 747 A.2d 433, 435 (Pa.Cmwlth.2000) (citing 24 P.S. §§ 16–1605, 16–1611 and 16–1613). In Student's District, the number of credits required to graduate is determined by the year a student matriculated to the high school. Since Student matriculated in the 1998–1999 school year he was required to earn 28.5 credits to graduate. The State Board of Education, however, has also been delegated the authority by the General Assembly to "adopt and prescribe standards and regulations for the proper education and training of all exceptional children by school districts...." 24 P.S.

---

18. Student cites to a Panel opinion for the proposition that the Panel has previously ordered districts to employ outside experts. We are not persuaded that the *appearance* of Panel authority is the equivalent of *actual* Panel authority. Student also states that "none of the Pennsylvania courts have overturned the decision of the Appeals Panel in any given case to order either in-service training of district personnel or the hiring of an independent consultant or expert to help the district write an IEP." Student fails to provide a citation to support this statement. Nor can this Court locate any binding legal precedent to support Student's assertion.

§ 13–1372(1). One of the standards set forth by the Board is that the curriculum designed for Student "provide higher level thinking skills and advanced content acceleration and enrichment. . . ." 22 Pa.Code § 342.38(a)(5).

 We assume the Panel ordered Student to be classified as a member of the class of 2000/2001 as a means to remedy the District's failure to provide an accelerated and enriched learning environment.[19] This particular remedy, however, is beyond the authority of the Panel. The District exercised its statutory authority when it set the graduation requirements based on the year of matriculation. Furthermore, although accelerated progress may permit Student to graduate before his peers, acceleration is relative to the work of his peers, as defined by the time of his matriculation. It is counter-intuitive to consider that Student's progress was accelerated by completing fewer credits, albeit faster, than his matriculation peers.[20] *See also* 1 Pa.C.S. § 1922(1) (presumption against an absurd or unreasonable result).

Accordingly, we reverse the Panel's order, as the remedies contained therein exceeded the Panel's authority.

### *ORDER*

AND NOW, this 30th day of October, 2001 the order of the Special Education Due Process Appeals Review Panel, signed January 25, 2001, is reversed.

---

19. This assumption is based on Student's plans to attend college following his early graduation. Further, the Panel added in a footnote to its order that *if* the first Hearing Officer decision were before it, the Panel would have counted his pre-high school courses of French and Algebra.

20. We are not asked to consider whether the Panel has the authority to grant credit for pre-high school courses, which could then satisfy the requirements of graduation. Our analysis is limited to whether the Panel has the authority to classify a student as a member of another class.