[J-65-2013] [MO:McCaffery, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,<br><br>Appellee<br><br>v.<br><br>CITY OF PHILADELPHIA AND PHILADELPHIA COMMISSION ON HUMAN RELATIONS,<br><br>Appellants | : No. 20 EAP 2013<br>:<br>: Appeal from the Order of Commonwealth<br>: Court entered on April 13, 2011 at No. 2445<br>: CD 2009, reversing the Order entered on<br>: November 10, 2009 in the Court of<br>: Common Pleas, Philadelphia County, Civil<br>: Division at No. 3055 July Term, 2009.<br>:<br>: ARGUED:   September 11, 2013<br>:<br>:<br>:<br>:<br>: |

## CONCURRING AND DISSENTING OPINION

**MR. JUSTICE EAKIN**                    **DECIDED:   September 24, 2014**

I agree with the majority's holding that SEPTA was not required to exhaust administrative remedies prior to seeking declaratory and injunctive relief.  However, I would hold it is not subject to the provisions of the Philadelphia Fair Practices Ordinance or the jurisdiction of the Philadelphia Commission on Human Relations, and I do not believe the appropriate way to resolve similar conflicts between state agencies and municipalities is through a test this Court developed, and utilized exclusively, for resolving competing interests in land use.   Accordingly, I dissent as to that aspect of the majority opinion.

The majority contends "nothing in the Ogontz[] line of cases, or the reasoning behind those decisions, suggests that [the Ogontz] analysis is restricted to conflicts over

the applicability of zoning laws." Majority Slip Op., at 12. While Ogontz[1] and its progeny may not have expressly limited their application to zoning disputes, in each of those cases, the conflict centered on land-use powers. See id., at 450; see also Hazleton Area School District v. Zoning Hearing Board, 778 A.2d 1205 (Pa. 2001); County of Venango v. Borough of Sugarcreek, Zoning Hearing Board, 626 A.2d 489 (Pa. 1993). To be sure, the test has been couched in broad terms by this Court and others. However, in the three decades following Ogontz, only one court in this Commonwealth appears to have actually applied the test outside the context of zoning. See Saucon Valley School District v. Robert O., 785 A.2d 1069, 1076 (Pa. Cmwlth. 2001).

In Southeastern Pennsylvania Transportation Authority v. Board of Revision of Taxes, 833 A.2d 710 (Pa. 2003), we could have — and under the majority's expansive reading of the case, should have — invoked Ogontz to resolve whether property SEPTA leased to private businesses was subject to local property taxes, but we did not. Instead, we left Ogontz where it began: in the realm of zoning. While the majority claims Board of Revision of Taxes "is consistent with [its] application of the Ogontz[] test here" because "[i]n both instances, we have sought to enforce the legislature's allocation of authority[,]" Majority Slip Op., at 14, it fails to explain why Ogontz was not discussed, or even mentioned, in Board of Revision of Taxes if it was not limited to disputes over zoning ordinances.

Today, the majority creates the possibility that SEPTA, a multi-state transportation authority operating in over 100 municipalities across southeastern Pennsylvania, will be forced to ensure compliance with every anti-discrimination ordinance enacted by a municipality in which it operates. However, I believe, given the legislature's decision to

---

[1] Department of General Services v. Ogontz Area Neighbors Association, 483 A.2d 448 (Pa. 1984).

confer upon SEPTA "the public powers of the Commonwealth as an agency and instrumentality thereof[,]" 74 Pa.C.S. § 1711(a), SEPTA's role in "performing essential governmental functions[,]" [2] and the absence of any indication local ordinances promulgated under the Pennsylvania Human Relations Act were meant to apply to the Commonwealth, we must assume the legislature intended to foreclose such an absurd result. Therefore, I see no need to extend the scope of the Ogontz test, and would instead affirm the judgment of the Commonwealth Court in full.

---

[2] In § 1781, when clarifying SEPTA would not be subject to taxation, the General Assembly provided:

> The effectuation of the authorized purposes of an authority created or continued under this chapter shall and will be in all respects for the benefit of the people of this Commonwealth, for the increase of their commerce and prosperity and for the improvements of their health and living conditions, and, since an authority will, as a public instrumentality of the Commonwealth, be performing essential governmental functions in effectuating such purposes, such an authority shall not be required to pay any taxes or assessments of any kind or nature whatsoever[.]

Id., § 1781.