IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : No. 20 EAP 2013 |
| | : |
| | : Appeal from the Order of Commonwealth |
| Appellee | : Court entered on April 13, 2011 at No. |
| | : 2445 CD 2009, reversing the Order |
| | : entered on November 10, 2009, in the |
| v. | : Court of Common Pleas, Philadelphia |
| | : County, Civil Division at No. 3055 July |
| | : Term, 2009 |
| CITY OF PHILADELPHIA AND PHILADELPHIA COMMISSION ON HUMAN RELATIONS, | : |
| | : |
| | : |
| | : |
| Appellants | : ARGUED: September 11, 2013 |

## OPINION

**MR. JUSTICE McCAFFERY**                          **DECIDED: September 24, 2014**

We granted review in this case principally to clarify the standard for determining whether a municipal ordinance applies to an agency or instrumentality of the Commonwealth. The Commonwealth Court concluded here that the Southeastern Pennsylvania Transportation Authority ("SEPTA") is a Commonwealth agency and therefore not subject to either the provisions of the Philadelphia Fair Practices Ordinance ("FPO"),[1] or the jurisdiction of the Philadelphia Commission on Human Relations ("the Philadelphia Commission"). The Commonwealth Court also concluded

---

[1] Phila. Code §§ 9-1101-1128.

that, because SEPTA was not amenable to the Philadelphia Commission's jurisdiction, it had no duty to exhaust its administrative remedies before that agency. For the reasons that follow, we vacate the order of the Commonwealth Court and remand for reconsideration under the proper standard.

This case has its origins in seven administrative proceedings against SEPTA that individuals instituted with the Philadelphia Commission from July 2007 through April 2009, alleging violations of the FPO.[2] At least two of the administrative complaints included claims of types of discrimination against which the FPO offers protection, but that the Pennsylvania Human Relations Act ("PHRA")[3] does not cover. See Stipulated Facts, ¶ 6-7; R.R. 258a-259a (listing administrative cases). SEPTA filed a motion to dismiss each of the administrative cases for lack of jurisdiction, and the Philadelphia Commission denied the motions. Id.

---

[2] In general terms, the FPO protects against discrimination: in employment based upon a person's race, ethnicity, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status; in public accommodations based upon race, ethnicity, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, disability, marital status, familial status, or domestic or sexual violence victim status; and in housing accommodation, commercial property and other real estate opportunities based upon race, ethnicity, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, disability, marital status, age, source of income, familial status, or domestic or sexual violence victim status. Phila. Code §§ 9-1103, 1106, 1108.

[3] 43 P.S. §§ 951-963. The PHRA protects most, but not all, of the categories of individuals covered by the FPO. In general terms, the PHRA protects against discrimination in employment, housing, and public accommodation because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, and national origin. In addition, it prohibits discrimination based upon the use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals.

While all seven administrative proceedings were still pending,[4] SEPTA instituted this civil action against Appellants seeking both declaratory and injunctive relief. SEPTA maintained in its complaint[5] that because it is a Commonwealth agency, and Appellants are a political subdivision and a municipal agency, respectively, the FPO does not apply to it, and the Pennsylvania Constitution barred Appellants from exercising jurisdiction over it.[6]

Appellants filed preliminary objections demurring to SEPTA's complaint. Appellants argued that because Philadelphia's powers under the First Class City Home Rule Act[7] extend to enacting and enforcing anti-discrimination laws, the FPO applied to SEPTA and the Philadelphia Commission had jurisdiction over it. Appellants further contended that an original action for declaratory and injunctive relief was inappropriate because SEPTA had to await final agency decisions in the individual administrative cases against it before it could seek appellate review in court. In response, SEPTA pointed out that the statute authorizing the creation of metropolitan transportation authorities, such as SEPTA, provides that such an authority "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof," 74 Pa.C.S. § 1711(a), and asserted that Philadelphia's authority as a home-rule jurisdiction extends

---

[4] See Complaint, ¶ 29; R.R. 50a ("In fact, SEPTA is presently litigating the jurisdiction issue at the [Philadelphia] Commission, to no avail.").

[5] Because we are conducting appellate review of an order sustaining preliminary objections in the nature of a demurrer to SEPTA's complaint, we treat the material factual allegations of SEPTA's complaint as true and make all reasonable inferences from those allegations in favor of SEPTA, as the party responding to the demurrer. We then ask whether, even taking those allegations and inferences as true, the law says with certainty that SEPTA cannot prevail. Jones v. Nationwide Prop. and Cas. Ins. Co., 32 A.3d 1261, 1267 (Pa. 2011).

[6] Complaint, ¶¶ 2, 19, 27; R.R. 46a, 49a-50a.

[7] 53 P.S. §§ 13101-13157.

only to the regulation of its municipal affairs. In its brief in opposition to the preliminary objections, SEPTA did not rely upon, or refer to in any manner, the section of its enabling legislation pertaining to sovereign and official immunity. 74 Pa.C.S. § 1711(c)(3). The trial court sustained the preliminary objections and dismissed SEPTA's complaint.[8]

SEPTA appealed to the Commonwealth Court, which reversed. SEPTA v. City of Philadelphia, 20 A.3d 558 (Pa.Cmwlth. 2011) (en banc). A majority of the court concluded that the Philadelphia Commission lacked jurisdiction because SEPTA is an "agency and instrumentality" of the Commonwealth and therefore within the jurisdiction of the Pennsylvania Human Relations Commission (the "State Commission"). The majority noted that the State Commission is responsible for the administration of the PHRA, which bans any "employer" from engaging in certain forms of discrimination. 43 P.S. §§ 955, 956(a). Because the PHRA defines "employer" as including "the Commonwealth or any political subdivision or board, department, commission or school district thereof,"[9] and because neither the PHRA nor the FPO explicitly grants the Philadelphia Commission jurisdiction over SEPTA, the majority concluded the State Commission – and not the Philadelphia Commission – had jurisdiction over SEPTA. The Commonwealth Court did not base any portion of its reasoning upon the section of SEPTA's enabling legislation pertaining to sovereign and official immunity. 74 Pa.C.S. § 1711(c)(3). Because the majority considered the State Commission's jurisdiction over SEPTA to be clear, and a Commonwealth instrumentality's challenge to "the scope of a governmental body's action pursuant to statutory authority" through a declaratory judgment action to be proper, the majority also concluded that SEPTA had no duty to

---

[8] Trial Court Order, dated 11/9/09; R.R. 24a.

[9] 43 P.S. § 954.

exhaust its administrative remedies before seeking relief in court. SEPTA v. City of Phila., supra at 563.

Now-President Judge Dante Pellegrini dissented. He concluded that SEPTA is not a Commonwealth agency, and even if it were, it would still be subject to the provisions of the FPO and the jurisdiction of the Philadelphia Commission. The dissent stated that the General Assembly had enacted the portion of SEPTA's enabling act that provides that a metropolitan transportation authority such as SEPTA is "an agency and instrumentality thereof" merely to avoid constitutional and statutory questions, such as limitations on local governments' acquisition of debt. 74 Pa.C.S. § 1711(a). The dissent opined that the cited language was not intended to render SEPTA a state agency for all purposes.

The dissent then concluded that even if SEPTA were part of the Commonwealth government, it nonetheless would be subject to the jurisdiction of the Philadelphia Commission under Commonwealth v. Ogontz Area Neighbors Association, 483 A.2d 448, 452 (Pa. 1984). In that case, the Department of Public Welfare ("DPW") – which we characterized as "an agency of the Commonwealth" – applied to the City of Philadelphia for the permits needed to build a facility for the mentally handicapped. Id. at 449-50. The City denied the permits on the ground that the proposed facility did not comply with use and other restrictions under the Philadelphia Zoning Code. On review in this Court, we rejected the notion that DPW was immune from local land regulations because it had the power to condemn property to establish the facility it sought to construct. We reasoned that because the General Assembly had established both the City and DPW, and had fixed the extent of each entity's powers, we would need to examine the enabling act of each entity to determine which entity's authority the legislature had intended to prevail for purposes of the parties' controversy. Because the

applicable statutes did not clearly state which entity the legislature had intended to be "preeminent," we applied the rule of statutory construction that a court may determine legislative intent by considering "the consequences of a particular interpretation." Id. at 455 (citing 1 Pa.C.S. § 1921(c)(6)). Because Philadelphia's zoning scheme would have been frustrated if DPW were to have prevailed, while subjecting DPW to local zoning rules and restrictions would not necessarily have frustrated DPW's mandate to establish mental health facilities, we concluded that the legislature had intended the City to have priority in the circumstances at issue.

The dissent here applied the principles we set forth in Ogontz and concluded that, as in Ogontz, the relevant statutes were ambiguous as to which entity was intended to have priority. The dissent therefore considered the effect of holding each entity preeminent and determined that ruling in SEPTA's favor would frustrate the legislature's intended scheme. Characterizing the PHRA as granting the State and Philadelphia Commissions "concurrent jurisdiction," the dissent explained that deeming SEPTA "preeminent" over Appellants would thwart the legislatively established system of shared jurisdiction. The dissent explained that, on the other hand, treating Appellants as "preeminent" would not interfere with SEPTA's purpose of providing public transportation. The dissent stated, "All the consequence of the City's and the [State Commission's] preeminence means is that SEPTA would still have to respond to complaints, like private companies, of those choosing to file their claims of unlawful discrimination with [the Philadelphia Commission]." SEPTA, supra at 569 (Pellegrini, J., dissenting).

Appellants sought allowance of appeal, which we granted to decide the following questions:

> (1)  Does the City have power to protect its residents from acts of discrimination by SEPTA, a metropolitan

transportation authority, where the Pennsylvania Human Relations Act explicitly states that nothing in the PHRA shall be deemed to repeal or supersede any of the antidiscrimination provisions of any municipal ordinance, the City's power to regulate discrimination is not sourced in the PHRA, the City's ordinance extends by its terms to SEPTA as an employer and provider of public accommodations, and concurrent state and local jurisdiction would not adversely affect SEPTA's core transportation mission?

(2) Should the City's Commission on Human Relations have been permitted, following the well-established rule of administrative exhaustion, to determine any challenges by SEPTA to its jurisdiction in the first instance, thereby having the opportunity to make findings on a developed factual record suitable for appellate review as to the nexus between the City's interests and the alleged discrimination, rather than the Commonwealth Court ruling on an abstract, premature challenge?

SEPTA v. City of Philadelphia, 65 A.3d 292, 292-93 (Pa. 2013).

**Appellants' Authority over SEPTA**

The first issue involves statutory interpretation, and as in all such matters, we follow the dictates of the Statutory Construction Act. Commonwealth v. Janssen Pharmaceutica, Inc., 8 A.3d 267, 275 (Pa. 2010).

Appellants echo the position of the Commonwealth Court dissent regarding the first issue. They argue that SEPTA is not "the Commonwealth" simply because its enabling act states it is a Commonwealth "agency and instrumentality," and even if it is the equivalent of "the Commonwealth," it is nonetheless subject to the jurisdiction of the Philadelphia Commission.

Appellants contend that the statutory declaration that metropolitan transportation authorities such as SEPTA are agencies and instrumentalities of the Commonwealth is

not determinative of this issue.  Appellants point out that we recently held, in Goldman v. SEPTA, 57 A.3d 1154 (Pa. 2012), that despite SEPTA's statutory classification as a Commonwealth agency, it is not entitled to assert in Pennsylvania courts the Commonwealth's Eleventh Amendment immunity against suits under the Federal Employers Liability Act.  Goldman v. SEPTA, supra at 1180.  Appellants characterize Goldman as the latest in a line of our cases addressing, in various contexts and with varying results, whether an authority statutorily designated as a Commonwealth agency is properly treated as part of the state government.[10]  Appellants maintain that our decisions in the cases they cite are consistent in that in each case, we did not consider the statutory declaration to be determinative of whether the authority could lay claim to the rights and prerogatives of the Commonwealth.

Appellants further argue that instead of treating the jurisdiction of the State Commission over SEPTA as a bar to the Philadelphia Commission's authority over SEPTA, the Commonwealth Court should have applied the legislative intent analysis of Ogontz, supra.  According to Appellants, the applicability of the PHRA to SEPTA would only be relevant here if either: (1) the PHRA preempted the FPO; or (2) the PHRA were the sole source of Philadelphia's authority to enact the FPO.  Appellants argue that

---

[10] Compare Blount v. Phila. Parking Auth., 965 A.2d 226, 231 (Pa. 2009) (holding that parking authority was subject to Commonwealth Court's original jurisdiction); James J. Gory Mech. Contracting, Inc. v. Phila. Housing Auth., 855 A.2d 669, 672 (Pa. 2004) (holding that although housing authority's enabling act designated it a Commonwealth agency, the General Assembly did not intend it to be subject to Commonwealth Court's original jurisdiction); T&R Painting Co., Inc. v. Phila. Housing Auth., 353 A.2d 800 (Pa. 1976) (holding that housing authority was not subject to Commonwealth Court's original jurisdiction); with SEPTA v. Bd. of Revision of Taxes, 833 A.2d 710, 718 (Pa. 2003) (holding that SEPTA, as a Commonwealth agency, was immune from local real estate tax for portions of its building used in furtherance of its statutory purpose, but not for portions rented to commercial entities); and Feingold v. SEPTA, 517 A.2d 1270, 1276 (Pa. 1986) (holding that SEPTA was immune from punitive damages).

neither is the case. They assert that SEPTA has conceded that the PHRA does not preempt the FPO, and that Philadelphia's power to enact the FPO flows not from the PHRA, but rather from the First Class Cities Home Rule Act. See supra n.7. Appellants further contend that because Philadelphia is a home-rule jurisdiction, its ordinances are "presumed to be valid, absent a specific constitutional or statutory limitation." Appellants' Brief at 32 (quoting In re Petition to Recall Reese, 665 A.2d 1162, 1164 (Pa. 1995)). Because SEPTA has identified no such limitation, Appellants argue the FPO should be presumed lawful.

In the alternative, Appellants maintain that even if SEPTA is deemed a state agency or instrumentality, it is properly subject, under Ogontz, to the provisions of the FPO and the jurisdiction of the Philadelphia Commission. Appellants assert that because, as in Ogontz, the words of the relevant statutes do not clearly resolve the question before us, we should consider the consequences of the respective interpretations the parties suggest. Appellants maintain that they prevail under such an analysis because SEPTA's purpose of providing public transportation will not be impeded if SEPTA is subject to the FPO. Appellants state that on the other hand, the additional protections of the FPO will be significantly hampered if a major employer and transportation provider such as SEPTA is determined to be exempt from the ordinance.

In response, SEPTA argues that the City may not apply the FPO to a Commonwealth agency and instrumentality, such as SEPTA. Citing Board of Revision of Taxes, supra; Hoffman v. Pittsburgh, 75 A.2d, 649, 654 (Pa. 1950); and Jones v. Tatham, 20 Pa. 398, 8 Harris 398, 1853 WL 6260 (1853), SEPTA argues that legislation does not affect the rights of the Commonwealth in the absence of an explicit statement or a clear indication from the legislature to the contrary. Disclaiming any preemption argument, SEPTA asserts that the Commonwealth Court majority cited the legislature's

explicit grant to the State Commission of authority over state agencies merely to illustrate that the General Assembly is capable of making such an express authorization when it wants to. On a policy note, SEPTA argues that because its operations extend across county lines, subjecting it to the FPO will result in "regulatory chaos." Appellee's Brief at 12.

SEPTA then challenges Appellants' reliance on Ogontz. It argues that the Ogontz analysis is only applicable where a state agency attempts to use real property in a way that conflicts with a local municipality's zoning ordinances. SEPTA argues that its interpretation of Ogontz is supported by our holding in Board of Revision of Taxes, supra, that property SEPTA owned, but leased to a commercial entity, was not immune from local taxes.

Finally, SEPTA contends that it prevails even under Appellants' Ogontz analysis, characterizing as not credible Appellants' assertion that exempting SEPTA from the FPO will significantly weaken the ordinance. SEPTA asserts that the City amended the FPO's definition of covered "employers" to add major Philadelphia employers other than SEPTA only after SEPTA instituted this litigation. SEPTA states that the earlier absence of major employers from the definition undercuts Appellants' argument that not enforcing the FPO against it will undermine the FPO's effectiveness, as other significant employers were previously free from the FPO's constraints. SEPTA also pointedly asserts that prior to this suit, the Philadelphia's Commission's website stated that it "does not have jurisdiction over state or federal agencies [or] authorities... ." Appellee's Brief at 2.

Both sides' arguments are persuasive in part. SEPTA is correct that its enabling legislation plainly states that it "exercise[s] the public powers of the Commonwealth as

an agency and instrumentality" of the Commonwealth. 74 Pa.C.S. § 1711(a).[11] Contrary to SEPTA's contentions, however, that is not the end of the matter.[12]

In a series of cases beginning with our decision in Ogontz, supra, this Court has held that a Commonwealth agency's challenge to a municipality's exercise of authority over it does not represent "a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state." See Ogontz, supra at 452; County of Venango v. Borough of Sugarcreek, 626 A.2d 489, 490 (Pa. 1993); Hazleton Area Sch. Dist. v. Zoning Hearing Bd., 778 A.2d 1205, 1210 (Pa. 2001). That is, because the legislature authorized the creation of both entities, and set the limits of each entity's authority, our task is to determine, through an examination of the relevant statutes, which entity the legislature intended to have preeminent powers. Ogontz, supra at 452. In short, "[t]he problem, essentially, is one of statutory interpretation." Id. Our standard of review of such a question of statutory interpretation is de novo, and our scope of review is plenary. Hazleton, supra at 1213.

As identified in Hazleton, our opinion in Ogontz, supra sets forth the analytical process a court is to follow to determine which entity the legislature intended to have preeminent powers over a given area of regulation.

> The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent. Id. In the event there is no such express legislative mandate, the second step requires the court "to determine legislative intent as to which agency is to prevail ... turn[ing] to the statutory construction rule that legislative intent may be determined

---

[11] In its brief to this Court, SEPTA again does not rely upon, or refer to in any manner, the section of its enabling legislation pertaining to sovereign and official immunity, 74 Pa.C.S. § 1711(c)(3).

[12] To be clear, we need not, and do not, determine whether SEPTA is properly treated as a Commonwealth agency for all purposes.

by a consideration, inter alia, of the consequences of a particular interpretation."

Hazleton, supra at 1210 (quoting Ogontz, supra at 455 (citing in turn 1 Pa.C.S. § 1921(c)(6))) (emphasis omitted).

Thus, in accordance with Ogontz, Venango, and Hazleton, SEPTA is wrong in asserting that, in order for a local governmental agency to prevail over a Commonwealth agency or instrumentality, the legislature must have clearly stated its intent in that regard. Rather, pursuant to this line of cases, we have applied the Statutory Construction Act in order to discern the legislature's intent. See Hazleton, supra at 1213 (applying Ogontz to determine that school district's authority to lease school grounds to others for recreational purposes did not trump local zoning code); Venango supra at 492 (applying Ogontz to conclude that county's statutory authority to use its property for jails was subject to borough's zoning ordinance). SEPTA has mistaken our insistence that courts seek out and effectuate the intent of the legislature for a requirement that the legislature state its intent clearly or explicitly that a municipality is to have "preeminent powers" over a state agency in a given area of law. Indeed, we concluded in Ogontz, supra, that Philadelphia **could** enforce its zoning code against DPW even though we could not discern from the face of the applicable statutes the legislature's intent as to which of the governmental entities was intended to have priority. And, contrary to SEPTA's suggestion and the dissent's approach, nothing in the Ogontz/Venango/Hazleton line of cases, or the reasoning behind those decisions, suggests that this analysis is restricted to conflicts over the applicability of zoning laws.

SEPTA's argument essentially is that the structure of Pennsylvania government imposes an implicit limitation on Philadelphia's powers and bars it from regulating the state, its agencies, or instrumentalities in the absence of the General Assembly's clear indication to the contrary. But SEPTA's argument runs counter to

<u>Ogontz/Venango/Hazleton</u>, which instructs us that, rather than being a competition between "superior" and "inferior" governmental entities, the issue is one of legislative intent.

For similar reasons, we conclude that Appellants' reliance on home-rule principles is misplaced. We consider the rule that a home-rule municipality's exercise of legislative power is presumed valid, absent a specific constitutional or statutory limitation, to relate to a municipality's authority to enact ordinances regarding a particular subject matter. That rule does not pertain to whether the municipality may enforce ordinances and regulations against a Commonwealth agency or instrumentality. We view the latter question as properly resolved under the <u>Ogontz/Venango/Hazleton</u> legislative intent analysis.

The cases on which SEPTA relies do not indicate otherwise. In <u>Board of Revision of Taxes</u>, <u>supra</u>, we held that although portions of a building owned and used by SEPTA were exempt from local taxation, other portions leased to private commercial enterprises, were subject to local real estate tax. We reached that conclusion by applying the longstanding presumption that a Commonwealth agency is immune from taxation when acting within its authorized governmental purposes and powers. <u>Id.</u> at 712 (citing <u>Del. County Solid Waste Auth. v. Berks County Bd. of Assessm't Appeals</u>, 626 A.2d 528 (Pa. 1993)). We stated that nothing in the statute authorizing SEPTA to lease its property to others provided any basis for concluding that SEPTA had been absolved from paying real estate tax for property used for "such a commercial venture." <u>Id.</u> at 717.

Our opinion in <u>Board of Revision of Taxes</u> thus addressed an issue not presented here: whether "a governmental agency or instrumentality [may] automatically claim immunity from local real estate taxation for property leased to third-party

commercial entities." City of Phila. v. Cumberland County Bd. of Assessm't Appeals, 81 A.3d 24, 51 (Pa. 2013). Moreover, to the extent local taxation is an exercise of municipal power, our treatment of the tax immunity issue in Board of Revision of Taxes is consistent with our application of the Ogontz/Venango/Hazleton test here. In both instances, we have sought to enforce the legislature's allocation of authority. We explained in Board of Revision of Taxes that we could not presume that the legislature's general grant of taxing power to local municipal governments was "meant to include property owned by the Commonwealth, since to allow such taxation would upset the orderly processes of government." Id. at 713. That is, allowing municipalities to tax Commonwealth real estate would, in effect, allow local municipalities to override the legislature's allocation of Commonwealth tax revenues, an outcome we could not reasonably endorse in the absence of an indication from the legislature that it intended such a result. See 1 Pa.C.S. § 1922(1) (courts are to presume that the legislature does not intend an unreasonable or absurd result); Commonwealth v. Dauphin County, 6 A.2d 870, 872 (Pa. 1939) ("The legislators did not intend to upset the orderly processes of government by allowing the sovereign power to be burdened by being subjected to municipal taxes."). We did not rely on the status of one entity as part of the Commonwealth government to resolve the dispute; rather, we engaged in the familiar processes of statutory construction to divine the legislature's intent as to which entity should prevail.

Nor do Hoffman v. Pittsburgh, supra, and Jones v. Tatham, supra, require a different outcome. SEPTA cites statements in each of those cases to the effect that "[w]ords of a statute applying to private rights do not affect those of the state." Appellee's Brief at 10 (quoting Jones, supra, 1853 WL 6260, at *12); see also Hoffman, supra at 654. While that statement is correct as a very general proposition, its

application is limited. As we explained in In re Public Parking Authority of Pittsburgh, 76 A.2d 620, 621 (Pa. 1950), the rule SEPTA cites is limited to cases "where there is a conflict between the sovereign power of the Commonwealth and the private rights of individuals, or whether the sovereign intended to make itself liable for torts of its servants, or whether the sovereign intended to pay interest on its obligations." This case falls into none of those categories. We are not faced here with a conflict between the Commonwealth and an individual; a controversy over the Commonwealth's liability under the doctrine of respondeat superior; or a question about whether the Commonwealth should pay interest on an obligation. Rather, we consider a dispute between two Commonwealth-created entities regarding the circumstances under which one of the entities may be subject to the authority of the other.[13]

In addition, we reject SEPTA's suggestion that a ruling in Philadelphia's favor here will risk extra-territorial application of the FPO and subject SEPTA to "regulatory chaos." Extra-territorial enforcement of the FPO is precluded by the First Class Cities Home Rule Act, which bars cities of the first class, i.e., Philadelphia, from "exercis[ing] any powers or authority beyond the city limits, except such as are conferred by an act of the General Assembly… ." 53 P.S. § 13133. No one has cited any statute remotely suggesting the FPO is viable outside of Philadelphia, and we are aware of none. Furthermore, the potential that Philadelphia might in some instance or instances attempt

---

[13] While SEPTA has not asserted the section of its enabling legislation pertaining to sovereign and official immunity, the Chief Justice dissents on the basis that pursuant to 74 Pa.C.S. § 1711(c)(3), SEPTA enjoys sovereign immunity in this case because the General Assembly has not expressly waived SEPTA's immunity from administrative proceedings. Concurring and Dissenting Opinion at 7. However, when presented with two competing absolutes-- here sovereign immunity and the authority of Philadelphia to enforce its ordinance, we employ the tools of statutory construction and interpretation to resolve the conflict. See Frazier v. W.C.A.B. (Bayada Nurses, Inc.), 52 A.3d 241, 247 (Pa. 2012).

extra-territorial enforcement of the FPO against SEPTA, is not truly relevant to the disposition of this declaratory judgment action. The issue here is whether, as a matter of law, the FPO and the Philadelphia Commission can ever have authority over SEPTA. The possibility that, in a particular case, the Philadelphia Commission might seek to apply the FPO outside Philadelphia has no bearing on the overarching legal question we address here – which entity the General Assembly intended to have priority. Any attempt at extra-territorial enforcement of the FPO will be properly dealt with if it ever arises.

Finally, SEPTA's arguments regarding alleged changes to the Philadelphia Commission's website and the FPO's new and more inclusive definition of employer after SEPTA initiated this case are not relevant. The issue here is whether the General Assembly intended for the Philadelphia Commission and the FPO to have jurisdiction over SEPTA. Because the FPO was enacted by Philadelphia City Council, the provisions of the FPO are not evidence of the General Assembly's intent. For similar reasons, any statements on the Philadelphia Commission's website are likewise not relevant.

In summary, we reiterate that the legislative intent analysis set forth in Ogontz/Venango/Hazleton represents the proper analysis for deciding this issue. Because the Commonwealth Court did not conduct that analysis, we vacate its order and remand the case for it to do so in the first instance.

**Administrative Exhaustion**

Appellants maintain that the Commonwealth Court erroneously concluded that SEPTA had no need to exhaust its administrative remedies through the Philadelphia Commission before commencing suit. Appellants argue that we have consistently held that an administrative agency is competent to determine its own jurisdiction, and that

SEPTA is not subject to any exception to that rule. SEPTA responds that it did not need to exhaust its administrative remedies before the Philadelphia Commission, contending that a party may bypass an agency's procedures and instead immediately seek declaratory relief in court to challenge that same agency's jurisdiction.

As a rule, where an adequate administrative process is available, a party may not forgo that process in favor of seeking judicial relief. Bayada Nurses, Inc. v. Com., Dep't of Labor and Indus., 8 A.3d 866, 875 (Pa. 2010); Empire Sanitary Landfill, Inc. v. Commonwealth, Dep't of Envtl. Res., 684 A.2d 1047, 1053 (Pa. 1996). Instead, the party must first exhaust its administrative remedies before proceeding to court. However, an exception exists for cases in which a litigant makes a purely legal challenge to an agency's jurisdiction. Id. at 1054. In such a case, the litigant may seek declaratory and injunctive relief in court without first exhausting its administrative remedies. Mercy Hospital of Pittsburgh v. Pennsylvania Human Relations Comm'n, 451 A.2d 1357, 1359 (Pa. 1982), is distinguishable. There, the provision of the PHRA under which the commission had sought to proceed pertained only to cases of discrimination in employment relationships, and the hospital argued that it had no employment relationship with the complainant. We concluded that equitable jurisdiction was not available in that case because the commission was competent to resolve the factual question of whether an employment relationship existed. Here, in contrast, we are confronted with a purely legal challenge to an agency's jurisdiction, not a factual one. Under our precedents, SEPTA was not required to exhaust its administrative remedies.

In conclusion, although the Commonwealth Court correctly determined that SEPTA was not required in this instance to exhaust its administrative remedies before commencing this declaratory judgment action, it erred by not applying the Ogontz legislative intent analysis to determine whether SEPTA may properly be held to the

provisions of the FPO and the jurisdiction of the Philadelphia Commission.  We therefore vacate the Commonwealth Court's order and remand the case to that court for it to conduct that analysis.

Mr. Justice Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Chief Justice Castille files a concurring and dissenting opinion.

Mr. Justice Eakin files a concurring and dissenting opinion.

Mr. Justice Saylor files a dissenting opinion.